149 P.3d 440 (2006)
In re the DEPENDENCY of E.P., A minor.
No. 24098-3-III.
Court of Appeals of Washington, Division 3.
December 21, 2006.
*441 Maurina A. Ladich, Spokane, WA, for Appellant.
David Wayne Coe, Office of Attorney General, Wenatchee, WA, for Respondent.
KATO, J.
¶ 1 By statute derived from due process guaranties, indigent parents have the right to counsel in termination proceedings. RCW 13.34.090(2); In re Welfare of J.M., 130 Wash.App. 912, 921, 125 P.3d 245 (2005). That right, however, may be forfeited. In re Welfare of G.E., 116 Wash.App. 326, 334, 65 P.3d 1219 (2003). In the circumstances here, R.P. forfeited her right to counsel. We accordingly affirm the termination of her parental rights.
¶ 2 While incarcerated, Ms. P. gave birth to E.P. on July 12, 2004. The Department of Social and Health Services (DSHS) filed a dependency action. On July 14, a shelter care hearing was held, where the court told Ms. P. to stay involved in the legal process and to give notification of address changes so she could be contacted. At her request, the court appointed counsel, Anthony Zinman, and advised her of the right to notice of all *442 hearings as well as the right to present evidence. As of September 8, when a shelter care review was held, she was still represented by Mr. Zinman.
¶ 3 On September 15, E.P. was declared dependent. Some time before January 12, 2005, when a dependency review hearing was held, Mr. Zinman had apparently withdrawn as counsel for Ms. P. and N. Smith Hagopian, who also represented her husband in the proceedings, had been appointed as her new lawyer. At the January 12 hearing, Mr. Hagopian asked to withdraw as counsel for both because of lack of contact. On January 4, 2005, he had mailed a notice of intent to withdraw as counsel for Ms. P. and her husband, effective January 14, 2005. Although initially allowing Mr. Hagopian to withdraw, the court reversed itself and kept him on as her counsel. The termination trial was set for March 30.
¶ 4 On February 23, counsel moved to postpone the termination hearing because Ms. P. had "resurfaced" even though he had lost contact with her over the past few weeks. Report of Proceedings (RP) (Feb. 23, 2005) at 5. It was his "sense . . . that she will be very engaged just before the actual termination trial date, such that I will be asked by her to represent her interests at that hearing, in a zealous manner." Id. The court denied the continuance. Mr. Hagopian then reiterated to the court he had lost contact with his client and asked to withdraw as counsel. The court also denied this request.
¶ 5 Ms. P. failed to appear for the March 30 termination trial. Counsel again sought to withdraw. In support, Mr. Hagopian advised the court that she had not communicated with him even though he had located her address and sent letters there, which were unreturned. He stated, "I have absolutely no idea what her position is relative to today, and am  thinking that my presence here would be a waste of time and potentially obstructionist. So I'm asking for opportunity and permission to withdraw." RP (Mar. 30, 2005) at 14. Counsel was allowed to withdraw.
¶ 6 The court proceeded with the termination trial in Ms. P.'s absence and unrepresented by counsel. After taking testimony and reviewing the documentary evidence, the court terminated her parental rights. This appeal follows.
¶ 7 Ms. P. contends the court violated her due process right to counsel by allowing her lawyer to withdraw at the beginning of the termination trial. Parents have the statutory right to counsel in child dependency and termination of parental rights proceedings. RCW 13.34.090(2); G.E., 116 Wash.App. at 331-32, 65 P.3d 1219. But the right may be waived. Id. at 334, 65 P.3d 1219.
¶ 8 In reviewing whether a parent waived the statutory right to counsel under RCW 13.34.090, the court in G.E. was guided by the three ways a criminal defendant may waive the right. A parent may "(1) voluntarily relinquish the right, (2) waive it by conduct, or (3) forfeit it through `extremely dilatory conduct.'" 116 Wash.App. at 334, 65 P.3d 1219 (quoting City of Tacoma v. Bishop, 82 Wash.App. 850, 858-59, 920 P.2d 214 (1996) (citing United States v. Goldberg, 67 F.3d 1092, 1099-1102 (3d Cir.1995))).
¶ 9 The record does not show that Ms. P. voluntary relinquished her right to counsel or waived it by conduct. The inquiry, then, is whether she forfeited the right. A parent can forfeit the right to counsel by extremely dilatory conduct. G.E., 116 Wash. App. at 334, 65 P.3d 1219. Forfeiture can occur even if Ms. P. was not warned about the consequences of her actions. Bishop, 82 Wash.App. at 859, 920 P.2d 214.
¶ 10 In In re Dependency of A.G., 93 Wash.App. 268, 968 P.2d 424 (1998), the trial court allowed the mother's counsel to withdraw at the beginning of the termination hearing and the mother's parental rights were terminated in her absence. The A.G. court held that, because of her inaction, the mother's due process rights were not violated. She made no effort to appear for hearings, including the termination trial, and her whereabouts were unknown. She had not been in contact with her lawyer or DSHS's Division of Child and Family Services for many months before it filed the termination action. Due to the mother's own inaction, *443 the court noted the lawyer "could not effectively or ethically represent her through the termination trial." Id. at 278, 968 P.2d 424.
¶ 11 Here, Ms. P. appeared at the shelter care hearing on July 14, 2004. She did not appear for shelter care review on August 11, but was apparently present for the review on September 8. She did not appear for the dependency review hearing on January 12, 2005. On February 23, her lawyer sought a continuance of the termination trial date because Ms. P. had "resurfaced" and, even though he had lost contact with her over the past several weeks, his "sense" was that she would ask him to represent her in a zealous manner. RP (Feb. 23, 2005) at 5. But the record belies his belief and reflects Ms. P. did not communicate with him. Indeed, Mr. Hagopian represented to the court prior to the start of the termination trial that he had no idea what the mother's position was relative to termination of her parental rights. As in A.G., because of her inaction, Ms. P.'s lawyer could not effectively or ethically represent her in the termination trial.
¶ 12 "[A] child's right to a stable home cannot be put on hold interminably because a parent is absent from the courtroom and has failed to contact his or her attorney." In re Dependency of C.R.B., 62 Wash.App. 608, 616, 814 P.2d 1197 (1991). Under the circumstances here, Ms. P.'s failure to act was extremely dilatory and sufficient to justify forfeiture of her right to counsel. See A.G., 93 Wash.App. at 278-80, 968 P.2d 424.
¶ 13 Ms. P. nevertheless contends the court should have appointed another lawyer for her after Mr. Hagopian withdrew. But she forfeited her right to counsel so the court was not required to appoint a third lawyer.
¶ 14 She also claims the court erred by denying her motion for a continuance of the termination trial. Such decisions are within the court's discretion and will not be disturbed absent abuse of that discretion. In re Schuoler, 106 Wash.2d 500, 723 P.2d 1103 (1986). On February 23, 2005, Ms. P.'s lawyer sought the continuance because he needed more time for the hearing than he originally thought the court had set aside. Advised to the contrary, her lawyer then argued that Ms. P. still needed the continuance so she could be more ready "in terms of services that she's engaged in, before March 30th." RP (Feb. 23, 2005) at 6. DSHS advised the court that she had not been engaged in services even though she said she was going to get involved. Id. at 7. Finding insufficient grounds to grant the continuance, the court denied her motion. The record reflects the court relied on tenable reasons for denying the continuance, so it did not abuse its discretion.
¶ 15 Ms. P. contends the court erred by holding the termination trial in her absence because the one-sided nature of the hearing made the risk of error unconscionably high. Moreover, she claims the court's findings and conclusions do not support termination of her parental rights because she was not present and could not present evidence. Notice and an opportunity to be heard are the essential requisites of procedural due process. A.G., 93 Wash.App. at 278, 968 P.2d 424 (citing Burman v. State, 50 Wash.App. 433, 440, 749 P.2d 708, review denied, 110 Wash.2d 1029 (1988)). Among the elements the court analyzes in determining whether a procedure adequately protects due process rights is the risk of error. A.G., 93 Wash.App. at 278, 968 P.2d 424. In termination proceedings, the risk of error in a default proceeding that does not reach the merits of a case is a significant burden on the competing interests of the parent, the child, and the State. C.R.B., 62 Wash.App. 608, 814 P.2d 1197.
¶ 16 Here, however, there was a meaningful hearing. The court took testimony, reviewed the documentary evidence, and made detailed findings on the substantive issues required to be proved by the State under RCW 13.34.180 and RCW 13.34.190. The record reflects the court considered the case on its merits and held the State to the requisite burden of proof on all issues. The risk of error was not unconscionably high. Ms. P. had notice and chose not to appear. Her lawyer could not effectively represent her because he had no communication with her and no idea what her position was. The court's findings are supported by the evidence *444 and they in turn support its conclusions.
¶ 17 Affirmed.
I CONCUR: SWEENEY, C.J.
SCHULTHEIS, J. (dissenting).
¶ 18 Because I believe that the risk of error was unacceptably high here based on a denial of R.P.'s right to counsel, I must respectfully dissent.
¶ 19 In Washington, parents have a statutory right to counsel in proceedings to terminate their parental rights. In re Welfare of G.E., 116 Wash.App. 326, 331-32, 65 P.3d 1219 (2003) (citing RCW 13.34.090(2); In re Dependency of Grove, 127 Wash.2d 221, 232, 897 P.2d 1252 (1995)). The statute requires that counsel be provided to an indigent parent who has appeared or requested the appointment of counsel "[u]nless waived in court." RCW 13.34.090(2).
¶ 20 A parent may (1) waive the right to counsel by voluntarily relinquishing it, (2) waive the right by conduct, or (3) forfeit it through "`extremely dilatory conduct.'" G.E., 116 Wash.App. at 334, 65 P.3d 1219 (quoting City of Tacoma v. Bishop, 82 Wash. App. 850, 859, 920 P.2d 214 (1996) (citing United States v. Goldberg, 67 F.3d 1092, 1099-1102 (3rd Cir.1995))). The first type of waiver requires a knowing, intelligent, and voluntary relinquishment of a known right, usually shown by an affirmative request. Bishop, 82 Wash.App. at 858, 920 P.2d 214. Forfeiture results in the loss of a right based on the defendant's extremely dilatory conduct, regardless of the defendant's knowledge of the right or intent to relinquish it. Id. at 858-59, 920 P.2d 214. Waiver by conduct, a hybrid of waiver and forfeiture, requires that the defendant be advised of the consequences of his actions and can be based on conduct less dilatory than required for forfeiture. Id. at 859, 920 P.2d 214. The first type of waiver obviously does not apply here.
¶ 21 Ms. P. was not warned concerning the maintenance of her right to counsel. At the first hearing when counsel was appointed, Ms. P. was advised she had the right to notice of the hearings at her last known address, the right to present evidence, that her attorney has subpoena power, and the right to an impartial judge. Notably, the judge told her that it was important that she not "disappear" or "drop out of sight" and "immediately notify anybody involved of any change of address so they know how to get a hold of you." Report of Proceedings (RP) (July 14, 2004) at 17. But that admonition was given in the context of the time limitations associated with the action.
¶ 22 She was advised not to move without giving a forwarding address because she would only receive notice of hearings at her last known address. But she was not warned that her conduct would result in the withdrawal of her counsel and that thereafter nobody would advocate her position.
¶ 23 In fact, Ms. P. was specifically advised that her entitlement to counsel was conditioned only upon her timely completion of paperwork.
¶ 24 Service of a notice of intent to withdraw under CR 71(c) is not sufficient for the warning required to be set forth in the record. See G.E., 116 Wash.App. at 337, 65 P.3d 1219; Bishop, 82 Wash.App. at 859, 920 P.2d 214. Such a notice would be inappropriate and misleading under these circumstances. CR 71(b) requires an order of the court for withdrawal of appointed counsel and notice of the motion to withdraw and the date and place the motion will be heard.
¶ 25 Moreover, the record is insufficient to show that Ms. P.'s conduct was extremely dilatory to invoke forfeiture. See Bishop, 82 Wash.App. at 860, 920 P.2d 214; G.E., 116 Wash.App. at 337, 65 P.3d 1219.
¶ 26 The majority cites In re Dependency of A.G., 93 Wash.App. 268, 968 P.2d 424 (1998). There, the State filed a termination petition and the motion was served by publication and abode service. At a preliminary hearing, the mother's counsel advised that the mother had not contacted him since she was served. A.G., 93 Wash.App. at 274, 968 P.2d 424. He said that he would continue to try to contact her before the fact-finding hearing that was scheduled more than a month later. At that hearing, the mother's attorney recounted his "`above and beyond'" *445 efforts to reach his client, and the court ultimately granted his motion to withdraw. Id. The hearing proceeded on the merits. The appellate court held that while the mother had a right to counsel, her due process rights were not violated by allowing counsel to withdraw at the beginning of trial because the mother's own inaction caused the withdrawal. Id. at 278, 968 P.2d 424. The mother had notice of the termination proceeding, but she did not appear at the trial and appointed counsel "could not effectively or ethically represent her." Id.
¶ 27 The majority opinion states that counsel for Ms. P. could not assume that she wanted to contest the proceedings. The record tells another story. Just five weeks earlier, counsel told the court that his client was "very engaged" and he expected that he would be asked to zealously represent Ms. P. at the termination hearing. RP (Feb. 23, 2005) at 5. Counsel responded by asking to be removed from the case; nonetheless, he said he understood her wishes in no uncertain terms.
¶ 28 Counsel in A.G. demonstrated "above and beyond efforts" to find his client and advocate the interests of his client, only if he knew what they were, but he could not, since he had been out of contact for six months. Id. at 273-75, 968 P.2d 424. The record in this case only shows counsel's half-hearted efforts over five weeks to effect service of a withdrawal notice to "general delivery"  which would be ineffective in any event unless it complied with CR 71(b). RP (Jan. 12, 2005) at 16. Counsel's greatest efforts, as they were documented, involved withdrawal.
¶ 29 Most troubling, there is a significant risk of error in this case. At one of the earliest hearings, Ms. P. told the judge that she did not understand the proceedings. The judge admonished counsel to work things out with his client and to report back the following week. There is no record of a confirmation of her understanding.
¶ 30 The continued difficulties with counsel only add to the risk. Ms. P.'s first attorney withdrew sometime after the trial judge admonished him. The first act of the next attorney who represented her (at least as reflected in the record on appeal) was to make a motion to withdraw. The record before this court shows that the trial court allowed counsel to withdraw on three separate occasions in less than six months. This revolving representation is disturbing.
¶ 31 Further, the trial court allowed counsel to withdraw on the day before trial when just weeks before, counsel suggested that he had evidence that Ms. P. had been attending Alcoholics Anonymous and Narcotics Anonymous meetings. The trial court did not require, nor did counsel offer, to provide the evidence to the court. If the trial court had denied the motion to withdraw, counsel could have presented some evidence of Ms. P.'s attempts to comply with the State's program requirements.
¶ 32 Moreover, counsel could have objected to evidence and other irregularities at trial. During the hearing, the State proffered noncertified copies of court documents as evidence, including three exhibits related to the uncontested dependency, and the trial court announced, "[Exhibits] [o]ne through four have been offered. Is there any objection? Even though they're not certified, hearing no objection the court will admit 1 through 4." RP (Mar. 30, 2005) at 18. An objection would have been entirely proper. See State v. Lee, 87 Wash.2d 932, 937-39, 558 P.2d 236 (1976); CR 44; RCW 5.44.010. But Ms. P. had no counsel present to object. The guardian ad litem's report was also allowed to be admitted after evidence was closed, during argument. See In re Welfare of Ott, 37 Wash.App. 234, 240, 679 P.2d 372 (1984).
¶ 33 In In re Welfare of J.M., 130 Wash. App. 912, 925, 125 P.3d 245 (2005), this court held that a parent was actually prejudiced by the failure of due process for ineffective assistance of counsel because "[w]e can only speculate as to what weaknesses in the State's case or strengths in [the parent's] case might have been revealed by competent counsel." I would hold that it would be impossible to determine how the State's witnesses would have held up under cross-examination had counsel been present and if evidence had been presented on behalf of Ms. P.
¶ 34 In summary, I am troubled that the trial court allowed the mother's attorneys to *446 withdraw at least three times during the course of their brief representation of Ms. P., including on the day of trial. I would find the risk of error in these proceedings to be significant. I do not believe that the record supports a determination that Ms. P. forfeited her right to counsel or that she was warned that her conduct could be deemed a waiver of her right to counsel. And it is unclear whether she was given notice of her attorneys' numerous motions to withdraw. I would conclude that Ms. P. was prejudiced by the loss of her right to counsel.