[No. 79973-3. En Banc.]

Argued June 28, 2007. Decided September 13, 2007.

THE CITY OF SEATTLE, *Petitioner*, v. STEPHEN KLEIN, *Respondent*.

THE CITY OF SEATTLE, *Petitioner*, v. MELISSA DEIBERT, *Respondent*.

*Thomas A. Carr*, *City Attorney*, and *Richard E. Greene*, *Assistant*, for petitioner.

*Christine A. Jackson* (of *The Public Defender*), for respondents.

¶1 J.M. Johnson, J. — The "right to appeal in all cases" is expressly guaranteed by our Washington Constitution. Wash. Const. art. I, § 22.[1] The only means by which such an individual constitutional right in Washington may be relinquished is by a voluntary, knowing, and intelligent waiver. In this case, the city of Seattle (City) claims the fugitive disentitlement doctrine (FDD) serves to abrogate the respondents' constitutionally guaranteed right to appeal. The FDD is a doctrine that presumes forfeiture rather than requiring a knowing waiver of the important right of appeal. We reject this doctrine insofar as it purports to substitute involuntary forfeiture for the well-established waiver principles found in our previous decisions. *See State v. Sweet*, 90 Wn.2d 282, 286, 581 P.2d 579 (1978); *State v. Kells*, 134 Wn.2d 309, 313, 949 P.2d 818 (1998); *State v. Tomal*, 133 Wn.2d 985, 988, 948 P.2d 833 (1997). Thus, we affirm the trial court's decision and emphasize the sanctity of the right to appeal.

## Nature of the Case

¶2 The City moved to dismiss respondents' right to appeal their underlying convictions due to subsequent arrest warrants issued after each failed to appear at their respective review hearings after appealing their convictions. The respondents argued that their appeals may not be dismissed because they had not made a voluntary, knowing, and intelligent waiver of their constitutional right to appeal.

[1] This is unlike the United States Constitution and those of many states that do not expressly provide this right.

¶3 The King County Superior Court agreed with the respondents and denied the City's motion in both cases. The court held that an arrest warrant for failure to appear, by itself, did not establish a voluntary, knowing, and intelligent waiver of the constitutional right. The City sought discretionary review. Division One of the Court of Appeals granted review on the dismissal question and stayed the appeal of a final decision of a court of limited jurisdiction (RALJ). Review of the dismissal issue was then consolidated and transferred to this court.

## Factual and Procedural History[2]

¶4 On December 30, 2005, Stephen Klein was charged in Seattle Municipal Court for an incident of assault that had occurred that day. CP-K at 10-18. He was convicted of the assault charge on March 29, 2006, in Seattle Municipal Court. Klein filed a timely appeal of the conviction. *Id.* at 17, 26-57. A condition of his suspended sentence was that he was to have no further criminal law violations. *Id.* at 3.

¶5 The sentence was not stayed pending the appeal. *Id.* On August 3, 2006, a review hearing was held, and Klein admitted he had been convicted of a new violation; thus, 10 days of his suspended sentence was revoked and he was ordered to serve his sentence on a work crew. *Id.* at 3-4, 17. A review hearing was set for September 18, 2006, to determine whether Klein had completed the work crew sentence. *Id.* at 4, 18. Klein did not appear at the review hearing, and his work crew sentence had not been completed, so the court continued the case for one week. *Id.* On September 25, 2006, the court received a probation report indicating that Klein had still not completed the work and

---

[2] Cause Nos. 59266-1-I, 59268-8-I, and 59269-6-I were consolidated for argument and disposition under Cause No. 59266-1-I in Division One of the Court of Appeals. Each set of clerk's papers is identified by the first letter of the corresponding party's last name (i.e., CP-K are Klein's clerk's papers and CP-D are Deibert's clerk's papers). Because Deibert was originally assigned two cause numbers, there are two sets of clerk's papers for her case. CP-D refers to the Cause No. 59269-6-I set of papers.

then issued a warrant for his arrest. *Id.* at 4, 18, 20. On October 20, 2006, the City moved to dismiss Klein's RALJ appeal because of the outstanding warrant for his arrest. *Id.* at 3-9. On December 8, 2006, the King County Superior Court denied the City's motion, holding that the warrant, by itself, did not establish a "knowing, intelligent, and voluntary waiver of his constitutional right to appeal." *Id.* at 23.

¶6 Melissa Deibert was charged in Seattle Municipal Court for an incident of misdemeanor theft that had occurred on or about September 27, 2005. CP-D at 52. On February 23, 2006, she was convicted of the misdemeanor theft charge after a jury trial. *Id.* at 10. As a result of the theft conviction, Deibert's deferred sentence on a prior conviction of prostitution was revoked. *Id.* at 21. As part of her suspended sentences, she was ordered to perform a total of six days on a work crew. *Id.* at 22. Deibert appealed both judgments. *Id.* at 14, 21.

¶7 The sentences were not stayed pending appeal. *Id.* at 3-4. She did not complete the work crew sentence, so the court scheduled a review hearing for October 27, 2006. *Id.* at 15, 22. The record does not indicate that Deibert was given notice that a subsequent bench warrant or failure to appear would constitute a waiver of her right to appeal. *Id.* at 25. Deibert failed to appear at the review hearing, and the Seattle Municipal Court issued a warrant for her arrest. *Id.* at 15, 22-23. The City moved to dismiss her RALJ appeal because of the outstanding warrant. On December 8, 2006, the King County Superior Court denied the City's motion, holding that the warrant, by itself, did not establish a "knowing, intelligent, and voluntary waiver of her constitutional right to appeal." *Id.* at 26.

¶8 We note that respondent Klein filed a request for judicial notice on June 27, 2007. *See* ER 201. The notice informs this court that Mr. Klein was booked into the King County Jail on May 1, 2007, pursuant to an outstanding warrant issued in the current case. Thus, Mr. Klein is now

properly within the jurisdiction of the appropriate court; meanwhile, his appeal has not yet been dismissed.

## ANALYSIS

### A. *Did the Respondents Waive or Forfeit Their Right To Appeal?*

¶9 In Washington, our constitution guarantees citizens accused of a crime "the right to appeal in all cases." WASH. CONST. art. I, § 22. However, the City argues that the respondents forfeited their right to appeal after the appeal had already been filed, when respondents avoided the trial court's jurisdiction by failure to appear at later hearings.[3] Br. of Pet'r at 5. "[W]aiver" is the "act of waiving or intentionally relinquishing or abandoning a known right . . . or privilege." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2570 (2002). When constitutional rights are involved, we require the government to bear the burden to prove "an intentional relinquishment or abandonment." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). However, forfeiture through the FDD presumes rather than proves constitutional waiver.

¶10 The FDD's underlying rationale is explained in *State v. Johnson*, 105 Wn.2d 92, 97, 711 P.2d 1017 (1986) (quoting *Eisler v. United States*, 338 U.S. 189, 192, 69 S. Ct. 1453, 93 L. Ed. 1897 (1949) (Frankfurter, J., dissenting)), where the court said:

> Defendants who affirmatively avoid the court's jurisdiction waive their appeal and cannot claim a violation of Const. art. 1, § 22 (amend. 10). *State v. Sweet*, 90 Wn.2d 282, 581 P.2d 579 (1978). As observed by Justice Frankfurter:
>
> > . . . When he [defendant] withdraws himself from the power of the Court to enforce its judgment, he also withdraws the questions which he had submitted to the Court's adjudication.

---

[3] There is no proof offered by the State that either defendant was ever outside the territorial jurisdiction of the court; each merely failed to appear in court.

Based on this reasoning, the City argues that missing the review hearings forfeits the respondents' right to appeal, per the FDD, in this matter.[4] Br. of Pet'r at 6. The City is incorrect.

¶11 *Sweet* is controlling on this point. We previously explained that a constitutional right to appeal can be waived only voluntarily, knowingly, and intelligently. *See, e.g., Sweet*, 90 Wn.2d at 287.[5] It follows that we do not embrace an inadvertent waiver without notice. In *Sweet*, the defendant was convicted of unlawful possession of a controlled substance. *Id.* at 284. The defendant then told his attorney he would like to file an appeal, but his attorney withdrew. *Id.* The defendant received no information detailing the steps for filing his appeal, and the time for appeal expired. *Id.* This court affirmed Sweet's right to appeal because he had not consciously waived it.[6]

¶12 The City argues that *Sweet* is distinguishable because these respondents had already filed their appeals, then forfeited their right by later action or failure to act, unlike in *Sweet* where the defendant had no opportunity to file at all. Br. of Pet'r at 8. This distinction makes no

---

[4] In support, the City cites *In re Dependency of E.P.*, 136 Wn. App. 401, 405-06, 149 P.3d 440 (2006), where a mother forfeited her statutory right to counsel in a termination proceeding by failing to appear for the trial and not responding to her trial counsel, even though she had not been warned about the consequences. This argument is misplaced because *E.P.* was clearly analyzing a statutory right to counsel in termination proceedings, and not the analogous Sixth Amendment right to counsel. *Id.* The constitutional right to appeal is the issue in the current case. *See* WASH. CONST. art. I, § 22.

[5] "Thus, in addition to showing strict compliance with CrR 7.1(b) by reading appeal rights to a defendant, the circumstances must at least reasonably give rise to an inference the defendant understood the import of the court rule and did in fact willingly and intentionally relinquish a known right.

". . . For example, if a convicted individual is clearly advised of the right to appeal and the procedure necessary to vindicate that right in the manner prescribed by CrR 7.1(b), demonstrates understanding, and is under no unfair restraint preventing vindication, failure to act can be said to be waiver—the intentional relinquishment of a known right." *Sweet*, 90 Wn.2d at 287.

[6] "Waiver could most clearly be shown by a demonstration in the record that the trial judge questioned the defendant about his understanding of the appeal procedure and his intentions with regard to an appeal. *See, e.g., Koehn v. Pinnock*, 80 Wn.2d 338, 494 P.2d 987 (1972)." *Sweet*, 90 Wn.2d at 287.

difference because in either case, a procedural defect (failure to file or failure to appear), *without notice* that the right to appeal may be lost, does not constitute knowing waiver of the core constitutional right.

¶13 The right to appeal is not waived unless the State proves that the appellant made a *voluntary, knowing, and intelligent waiver.*[7] Br. of Resp'ts at 8; *Sweet*, 90 Wn.2d at 286. The *Sweet* standard rejects the notion that a criminal appellant abandoned or forfeited the right to appeal because of the manner in which the appeal was prosecuted. *See also Tomal*, 133 Wn.2d 985; *Kells*, 134 Wn.2d 309. In *Tomal*, 133 Wn.2d at 989, this court held:

> In a criminal appeal of right, knowing waiver by the defendant is required to dismiss an appeal. . . . However, there can be *no presumption in favor of the waiver of the right to appeal* in a criminal case. Rather, the State carries the burden of demonstrating that a convicted defendant has made a voluntary, knowing, and intelligent waiver of the right to appeal.[8]

(Emphasis added.)

¶14 The *Tomal* court also noted that inaction by the appellant may establish a valid waiver only when the appellant has been *informed* of the consequences of his or her conduct. *See id.* at 990. A trial judge may give notice to the defendant that absence or failure to comply with procedures may constitute a waiver of the appeal, but that was not done here. In short, there is no presumption of waiver. In fact, our case law mandates that waiver must be affirmatively proved by the State. *Id.*

¶15 The knowledge component of waiver was also explored in *Kells*, 134 Wn.2d at 314. In *Kells*, the defendant was not informed of his right to appeal the declination order

---

[7] The very narrow forfeiture doctrine has been held to allow waiver of a constitutional right where the court expressly finds "extremely dilatory" conduct. *City of Tacoma v. Bishop*, 82 Wn. App. 850, 859, 920 P.2d 214 (1996) (citing *United States v. Goldberg*, 67 F.3d 1092, 1100-01 (3d Cir. 1995)). No findings of "extremely dilatory" conduct were entered by the court in the instant case.

[8] Citing *Sweet*, 90 Wn.2d at 286.

transferring him to superior court. *Id.* at 311. This court held that the State did not affirmatively demonstrate that Kells understood his right to appeal, and he did not "consciously [give] up that right." *Id.* at 314. This court explained that "an involuntary forfeiture of the right to a criminal appeal is never valid." *Id.* at 313. Thus, knowledge is a crucial component of the waiver of appellate rights. *See also State v. French*, 157 Wn.2d 593, 601, 141 P.3d 54 (2006) (citing *Sweet*, 90 Wn.2d at 286). Here, the respondents had no reason to believe that missing subsequent court dates would cause their appeal to be dismissed, although they likely knew they could be punished or sanctioned. Indeed, at oral argument, the city attorney effectively conceded that no judge had ever informed the respondents that they would lose this right if they failed to appear.

¶16 Finally, we turn to the City's argument that respondents intentionally waived their right to appeal by conduct. "Waiver by conduct" cases in Washington give us excellent guidance on this issue. *See, e.g.*, *City of Tacoma v. Bishop*, 82 Wn. App. 850, 859, 920 P.2d 214 (1996). Case law in the appellate courts has allowed waiver by either conduct or forfeiture. However, waiver of the constitutional right to counsel requires a clear showing that the accused has affirmatively requested to proceed pro se and has been adequately warned of the risks of self-representation. *Id.* at 858. In rare circumstances, "forfeiture" has been found where the conduct of the accused was "extremely dilatory." *Id.* at 859. Relinquishment by conduct is only constitutional once a defendant has been warned that he or she will waive this right if he or she engages in dilatory tactics. Any misconduct thereafter may be held to include an implied request to proceed pro se and a waiver of counsel. *Id.*

¶17 We briefly address whether the respondents here lost their right to appeal due to waiver by conduct. In *Bishop*, even though the defendant's conduct could have been an "implied request" to proceed pro se, such a request was not a valid waiver because the party did not clearly have knowledge of the consequences; the court did not warn

him of the risks of self-representation. *Id.* Here, the record shows respondents were not warned that the failure to appear in the trial court to comply with the terms of the prior orders might be argued to waive the right to appeal. Br. of Resp'ts at 29-30. There could be no implied request for waiver under these facts.

¶18 Moreover, the court did not make any findings of "extremely dilatory" conduct. This also distinguishes *In re Dependency of E.P.*, 136 Wn. App. 401, 149 P.3d 440 (2006) from the current case. *See supra* note 4. In *E.P.*, the mother had forfeited her statutory right to counsel by failing to appear at court hearings, of which she had notice, and failing to have any contact with her trial counsel. *E.P.*, 136 Wn. App. at 404-06. The court found this conduct to be "extremely dilatory," thereby constituting forfeiture. *Id.* at 406. Here, there is no record that the respondents' behavior impaired the criminal appellate process that is handled by their counsel. The respondents' presence is not required at any hearing for their appeal. Br. of Resp'ts at 30. In sum, the respondents did not knowingly waive their right to appeal.

B. *The Fugitive Disentitlement Doctrine*

¶19 Our most recent case, which analyzed the FDD, *French*, 157 Wn.2d 593, did not reach this particular constitutional question. The issue in *French* was whether the FDD applies when a defendant absconds from the jurisdiction after conviction but before sentencing. *Id.* at 599. In *French*, the defendant fled to Mexico after he was convicted of one count of first degree child molestation, two counts of first degree rape of a child, and three counts of second degree rape of a child. *Id.* at 597. The court specifically declined to decide whether the FDD, as applied to postconviction defendants, is unconstitutional. *Id.* at 602 n.2.[9] The court then held that "the fugitive disentitlement

---

[9] "French appears to be arguing the fugitive disentitlement doctrine itself is unconstitutional, regardless of whether it is applied to a defendant who flees the

doctrine generally does not apply to a defendant who absconds after conviction but before sentencing." *Id.* at 602.

¶20 The City argues that the trial court's reliance on *French* is misplaced because nothing in its language purports to overrule any of the cases applying the FDD to a defendant who has *already been sentenced and has filed a notice of appeal* before fleeing the court's jurisdiction. Br. of Pet'r at 10-11. However, the *French* court also endorsed the holding in *Sweet*, which says "that the State bears the burden to show a defendant made a knowing, intelligent, and voluntary waiver of his or her right to appeal."[10] *French*, 157 Wn.2d at 602 (citing *Sweet*, 90 Wn.2d at 286). Therefore, without a knowing, intelligent, and voluntary waiver of the constitutional right to appeal, the City's argument to dismiss the respondents' appeals fails.

¶21 Respondents cite similarities between the FDD analysis in *French* and the instant case, particularly emphasizing that reasons for the doctrine "become attenuated when applied in the context of a convicted but unsentenced defendant." *Id.* Here, the FDD rationales are inapplicable where a criminal appellant has asserted the constitutional right to challenge a potentially erroneous conviction on appeal.[11] Br. of Resp'ts at 25. Other jurisdictions such as

---

jurisdiction before or after instigating an appeal. Because this case does not involve a defendant who fled after filing an appeal, we do not reach that issue. We limit our analysis to defendants who flee after conviction but before sentencing." *French*, 157 Wn.2d at 602 n.2.

[10] While this case is factually different from *French* in regard to the sentence timing, the basic holding of *French* supports the trial court's ruling in the instant case.

[11] The respondents address the rationales set forth in favor of the FDD and describe why each does not apply in the instant case. They argue (1) that the respondents' appeals are not moot because the courts can provide effective relief by reversing their convictions; (2) scorning the court's authority is not sufficient to justify dismissal of an appeal that is a constitutional right, and any waiver of this right must be knowing, intelligent, and voluntary; (3) the City has failed to demonstrate any specific prejudice suffered by the prosecution from the respondents' absence and; (4) any deterrent effect of dismissal is adequately addressed by the fact that punishment can, and likely will, be imposed on probationers who fail to appear or comply with their sentences and on prisoners who escape. *See, e.g.*, *French*, 157 Wn.2d at 600-01; *State v. Rempel*, 114 Wn.2d 77, 785 P.2d 1134 (1990).

New Mexico and Utah have rejected the FDD because the constitutional right to appeal overrides the doctrine's procedural underpinnings. *E.g., Mascarenas v. State*, 94 N.M. 506, 612 P.2d 1317, 1318 (1980);[12] *State v. Tuttle*, 713 P.2d 703, 705 (Utah 1985).[13] In conclusion, any conflict between waiver and the right to appeal must be decided in favor of the express constitutional right.

¶22 We recognize that Washington courts have dismissed appeals where the criminal appellant fled the jurisdiction, escaped from jail, or violated the conditions of release pending appeal. Most notable is *Johnson*, 105 Wn.2d 92, where one of the defendants' release was clearly conditioned upon probation. His failure to appear at the court-ordered probation revocation hearing affirmatively waived his right to prosecute his appeal. *Id.* at 97-98. The *Johnson* court based its decision on the FDD; however, none of the cases cited by the *Johnson* court squarely addresses whether the FDD is incompatible with the waiver of Washington constitutional rights. *See, e.g., State v. Koloske*, 100 Wn.2d 889, 892, 676 P.2d 456 (1984) ("Our refusal to proceed with discretionary review in the absence of defendant does not raise the constitutional issue."), *overruled in irrelevant part by State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013 (1989).

¶23 The right to appeal a criminal conviction is expressly guaranteed by the Washington Constitution. WASH. CONST. art. I, § 22. We apply this protection as it is written and also rely heavily on our holding from *Sweet*:

> We have held there exists *no presumption* in favor of waiver of constitutional rights. *State v. Emmett*, 77 Wn.2d 520, 463 P.2d 609 (1970). This principle applies equally well to the constitutional right to appeal.

---

[12] "A person convicted of a crime does not forfeit his right to appeal simply because he has escaped from confinement. He still has a right to have his conviction reversed if he was erroneously convicted or if his constitutional rights were violated." *Mascarenas*, 612 P.2d at 1318.

[13] The theory "that an escape is an intentional abandonment of an appeal—is founded upon a questionable assumption, *i.e.*, that one who escapes has actually made a decision to abandon his appeal." *Tuttle*, 713 P.2d at 704.

> We hold there is *no presumption* in favor of the waiver of the right to appeal. *The State* carries the burden of demonstrating that a convicted defendant has made a voluntary, knowing, and intelligent waiver of the right to appeal.

*Sweet*, 90 Wn.2d at 286-87 (first and second emphasis added). The government must carry the burden of demonstrating that the right to appeal was knowingly waived by either respondent, and it failed to do so. *Id.* at 286.

¶24 Clearly, the FDD is a judicially created doctrine that cannot assume the authority to repeal a constitutional mandate.[14] *See, e.g.*, *City of Seattle v. Patu*, 147 Wn.2d 717, 722, 58 P.3d 273 (2002) ("Because the invited error doctrine is a judicially created prudential doctrine, it is not an absolute bar to review of fundamental constitutional rights."). The right to appeal is an essential tool for preventing erroneous convictions and maintaining the integrity of the criminal justice system, to wit: "The presence of the right to appeal in our state constitution convinces us it is to be accorded the *highest respect* by this court." *Sweet*, 90 Wn.2d at 286 (emphasis added).

¶25 Finally, we recognize the separate constitutional guaranty of due process that no person may be deprived of "life, liberty, or property, without due process of law." U.S. CONST. amends. V & XIV, § 1; WASH. CONST. art. I, § 3. In the criminal context, due process requires that a criminal defendant be given notice *prior* to deprivation of a substantial right. *City of Seattle v. Agrellas*, 80 Wn. App. 130, 136-37, 906 P.2d 995 (1995) (citing *State v. Fleming*, 41 Wn. App. 33, 35-36, 701 P.2d 815 (1985)). The right to appeal is a fundamental constitutional right that applies in "all cases" and may be waived only by a voluntary, knowing,

[14] We distinguish the application of the FDD in foreign jurisdictions with its application in Washington. For example, the seminal Washington FDD case, *State v. Handy*, 27 Wash. 469, 67 P. 1094 (1902), actually imported the rule from states that do not recognize a state constitutional right to appeal. This is unlike Washington, where the FDD is in conflict with a constitutional right, and the FDD *has not* been codified as a rule by the Washington Supreme Court or the legislature. Br. of Resp'ts at 20. Thus, *Handy* and *Johnson* must be read using the *Sweet* standard for waiver of a constitutional right.

and intelligent waiver. WASH. CONST. art. I, § 22; *see, e.g.*, *Kells*, 134 Wn.2d at 315. Due process requires notice of proscribed conduct so that there is a fair warning of potential penalties from a chosen course of action. *See, e.g.*, *In re Pers. Restraint of Powell*, 92 Wn.2d 882, 888, 602 P.2d 711 (1979).

¶26 Here, the respondents were not given notice, beyond the normal filing deadlines, that any failure to appear for hearings or any noncompliance with probation could result in forfeiture, waiver, or relinquishment of their right to appeal. Br. of Resp'ts at 32. A court may fine, sanction, hold in contempt, or otherwise discipline a defendant for delaying or disruptive behavior. However, it may not dismiss a criminal appeal merely because the defendant does not comply with the court's orders on tangential matters.

## CONCLUSION

¶27 The right to appeal is guaranteed by Washington Constitution article I, section 22, and the importance of this right has been reiterated in numerous cases by this court, *e.g.*, *Tomal, Kells, Sweet*, and *French*. The FDD cannot deprive someone of his or her constitutionally guaranteed right to appeal, even if applied after the appeal has been filed. Admittedly, the respondents did not attend later review hearings. There is, however, no evidence that the respondents made a voluntary, knowing, and intelligent waiver of their right to appeal their convictions, which had been timely filed.

¶28 Here, the State did not even inform the respondents that it could ask—as sanction for nonattendance at court hearings—the court ordered loss of their appellate rights. Indeed, we have never held this could be an appropriate sanction. The State failed to satisfy the strict burdens necessary to prove waiver of this important right. We hold that dismissing the respondents' appeals based on their absence from a review hearing, without notice, would

violate their constitutional right to appeal. We affirm the trial court's ruling.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.