IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | No. 33924-6-III |
| | ) | (consolidated with |
| M. I.-S., | ) | No. 33925-4-III; |
| A.I.-S., | ) | No. 33926-2-III) |
| C.S., | ) | |
| minor children. | ) | UNPUBLISHED OPINION |
| | ) | |

SIDDOWAY, J. — After allowing two of K.I.'s attorneys to withdraw before a

termination trial, the trial court refused to appoint K.I. another attorney. K.I. proceeded

to trial pro se, at the end of which the trial court terminated her parental rights to her three

children. K.I. appeals, arguing the trial court violated her right to counsel when it refused

to appoint her an attorney at trial. Because K.I. did not waive or forfeit her right to

counsel, we reverse and remand for a new trial.

FACTS AND PROCEDURAL HISTORY

K.I.'s[1] parental rights to three children are at issue in this appeal.[2] The

Department of Social and Health Services (Department) received three referrals about the

family between May 2010 and June 2012. The referrals generally reported that the

parents were abusing prescription medication, marijuana, and methamphetamine, that the

---

[1] Initials are used to protect the anonymity of the parties involved.
[2] The father does not appeal the trial court's order terminating his parental rights.

home was dirty, and the children were being neglected. Following an investigation, the children were removed and found dependent on November 13, 2012.

Nearly two years later, on October 8, 2014, the Department filed for termination of K.I.'s and the father's parental rights as to all three children.[3] Attorney Diana Anderson was initially appointed to represent K.I. in the termination proceedings. However, as part of reassignment of caseloads, on October 14, 2014, the trial court appointed Craig Matheson as counsel for K.I. The record does not reveal that K.I. had communication problems with Mr. Matheson.

Trial was initially scheduled to begin on March 11, 2015. However, at some point before the scheduled March 9 pretrial status hearing, counsel for K.I. filed a motion to continue the trial so K.I. could enter inpatient treatment. At the pretrial hearing, Mr. Matheson explained he no longer sought a continuance for K.I. to attend inpatient treatment, but rather, sought additional time to contact witnesses and deal with potential issues under the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963. Ultimately, the trial court granted the motion to continue based on the illness of the attorney for the children's father.

On April 1, after the Honorable Carrie Runge was pre-assigned as the judge on the case, trial was set to begin August 3, 2015.

---

[3] The record only contains the petition for termination as to M.I.-S., but it is clear from the record that petitions were filed for the two other children as well.

2

A month later, on May 4, the Department filed a motion for partial summary

judgment because it determined the children did not qualify as "Indian Children" under

ICWA. Clerk's Papers (CP) at 311. In June, a guardian ad litem (GAL) was appointed to

represent the children's interests under ICWA. Also in June, Mr. Matheson decided not

to renew his contract with the State and transferred the case back to Ms. Anderson, to be

effective July 1. Due to the new GAL and attorney appointments, on June 17 the trial

court rescheduled the start of trial for October 19, 2015.

On July 20, 2015, less than three weeks after being appointed, Ms. Anderson

moved to withdraw as K.I.'s counsel at a hearing on the grandmother's motion to

intervene. The basis for Ms. Anderson's motion was that K.I. had not remained in

contact with her and had informed others that Ms. Anderson was not her attorney:

> On July 8th, I received a telephone call from the social worker on
> this case who was attempting to set up a Shared Planning meeting at the
> request of [K.I]. She was calling to find out who [K.I.'s] attorney is, or
> would be, since [K.I.] had informed her that I was "fired." I immediately
> had my parent advocate, Cathy Metz, try to locate and/or contact [K.I.] to
> set up a meeting since I had not heard from her since I officially took over
> the case. Ms. Metz finally managed contact through text messaging and
> [K.I.] confirmed her intent to attend a meeting with me on Friday, July 10th
> at 10:30 [a.m.] I remained at the meeting location for at least 45 minutes
> and [K.I.] failed to show[.]
> Today I received a phone call from [K.I.'s] mother, . . . [who]
> informed both myself and Ms[.] Metz (in separate phone calls) that she had
> talked with [K.I.] over the weekend and that [K.I.] unequivocally stated that
> I [Diana Anderson] am ["]no longer her attorney[.]"
> I have had no other contact, directly or indirectly, with [K.I.] since
> my re-appointment effective July 1, 2015[.] I cannot represent a client that

3

refuses to meet or otherwise communicate with me and apparently does not want me to represent her in any event.

CP at 1107-08 (tenth alteration in original).

At the hearing on the motion, the trial court asked K.I. whether she wanted Ms. Anderson to continue to represent her:

> THE COURT: So, do you want Ms. Anderson as your attorney or are you wanting her to withdraw and you be appointed a new attorney?
> THE RESPONDENT: I would like another attorney, please.
> THE COURT: Okay. Well, you might think about that. If you want Ms. Anderson—you don't want Ms. Anderson to be your attorney; is that correct?
> THE RESPONDENT: Correct.
> THE COURT: And would you like her dismissed right now?
> THE RESPONDENT: I don't think—yes.
> THE COURT: All right. Well, I think you can be dismissed.

Report of Proceedings (RP) (July 21, 2015) at 6-7. After allowing Ms. Anderson to withdraw, the trial court proceeded with the hearing on the motion to intervene without appointing another attorney:

> But we will proceed with the hearing today, and I am not going to assign you another attorney, at least not until I have some type of—you have been through how many attorneys? Ms. Anderson, Mr. Matheson, now Ms. Anderson again. I don't know why you're asking for another attorney.

*Id.* at 7. Ms. Anderson then clarified that though she had initially been appointed to represent K.I., the case had been transferred to Mr. Matheson as part of reassignment of caseloads. In response, the court stated:

4

> Well, for purposes of today's hearing I won't assign an attorney. We'll see who your new attorney may or may not be when that paperwork's—the paperwork gets wrapped up.

*Id.* at 8. The court also advised K.I. that it would need a letter from her explaining why she needed a new attorney. At the end of the hearing, K.I. was arrested and taken to the Benton County jail on an outstanding warrant.

At the next hearing, which took place nine days later on July 30, 2015, the trial court noted K.I. had not submitted the letter explaining why she needed a new attorney, but allowed her to make an oral motion for an attorney. K.I. explained:

> Yeah. Um, my—my last lawyer, I just feel like wasn't representing me. She told me that it was too late to get better, and that you know, that I needed to sign this open adoption agreement. And I was . . . in here last time, and I wasn't in no state of mind to—to sign something like that. And I had to get out and revoke it because I—when I got out, I thought no, what the heck; that's not right, you know.
> And, um, so I just feel like I wasn't being represented to the fullest. And I feel like that because I had her before, um, you know, there's a lot of history and everything. And I don't feel like she would be representing me to the fullest.

RP (July 30, 2015) at 110. The trial court explained it was the attorney's duty to advise K.I. and that even if the attorney communicated difficult information it did not mean she was not fully representing K.I. Nevertheless, the court agreed to appoint another attorney. K.I. requested tribal counsel due to her Native American heritage, but the trial court declined:

> Uh, at this, uh, late point, not having heard any of the substantive issues in this case, uh, we are here in state dependency court. This case has been

5

pending in state dependency court since 2014. So we'll follow our normal procedures, and I'll ask for the next counsel in the lineup. Um, you don't get to choose your lawyers. Certainly, if you wish to hire your own lawyer, you can do that and hire any lawyer that you wish. But we'll follow the standard procedures.

*Id.* at 111. Accordingly, the court appointed Attorney Adrienne Farabee to represent K.I.

The court instructed K.I. to contact Ms. Farabee, but also advised her that she had the

right to contact her tribe about obtaining tribal counsel. The order of appointment

contained language about the necessity of contacting the appointed attorney

immediately.[4]

On August 31, 2015, at a hearing on several motions, Ms. Farabee moved to

withdraw as K.I.'s counsel and provided K.I. a copy of the motion to withdraw. Ms.

Farabee explained the basis for her withdrawal was lack of contact with K.I.:

> I currently represent mother. I have not had any contact with her since I was appointed.
> My office received a phone call from her, I think shortly after I was appointed, from the jail. She indicated that she would call once she got out to give us her updated contact information.

---

[4] All of the orders appointing counsel for K.I. contained the following language:
3.3 The MOTHER shall immediately contact the appointed lawyer.
3.4 The MOTHER shall immediately complete and provide to the court an indigency screening form[.] Failure to contact the appointed lawyer and fully complete and provide the indigency screening form shall result in a determination of ineligibility, and the immediate revocation of the provisional appointment. The court shall notify MOTHER of the termination of counsel, which is subject to court reinstatement.
CP at 11, 1122.

> We did not receive a call. We received her phone number from the Department. I tried to call the number multiple times and was informed that she had given that phone to someone else. So I have not had any contact with her.
> Based upon that, I am asking to be withdraw[n] from all three cases.

RP (Aug. 31, 2015) at 4. The trial court granted Ms. Farabee's motion to withdraw. K.I. was not present at the hearing.

Six weeks later, at the October 16, 2015 readiness hearing, K.I. explained the difficulty she was having retaining counsel:

> I did contact the tribe and I'm just waiting back on them right now. They—they—I can't remember the person's name—but I got a hold of the—Chief Two Feathers. He's part of the [American Indian Movement], which my great uncle was in, Leonard Pelter, and I just been—they're supposed to send me something stating whether or not they wanted to come and support—or, like—because I—at this point I don't have an attorney right now, either.
> I've been trying to look for one to hire and it's all too close to trial and nobody was really, you know, wanting to—like they say, you know, it's impossible to get anything done that soon. So, I don't know—

RP (Oct. 16, 2015) at 24. The court decided that trial would begin as scheduled three days later, on Monday, October 19, 2015. K.I. then expressed confusion about the procedures for preparing for trial pro se:

> THE RESPONDENT: . . . I don't even know what to do—I don't know what to do on how—about getting an attorney or anything either, so—
> THE COURT: Okay. Well, I appointed you an attorney at your request back on July 30th.
> THE RESPONDENT: Right. And—

7

> THE COURT: And on August 31, when we came in to court, you were not present, you had made no contact with Ms. Farabee, so she was allowed to withdraw.
> THE RESPONDENT: Okay.
> THE COURT: We can't keep delaying the case because you choose not to be in contact with lawyers—
> THE RESPONDENT: Right.
> THE COURT: —that are appointed to represent you. So, it's up to you. We are set for trial on Monday and we're proceeding forward—

*Id.* at 25-26.

The case proceeded to trial as scheduled on October 19. K.I. represented herself. That afternoon, K.I. asked the court: "Is there any chance that I can get an attorney still?" RP (Oct. 19, 2015) at 128. The court responded: "You were told on Friday that you could get an attorney. The Court's appointed a couple of attorneys, and you do not maintain contact. So the Court is done appointing attorneys for you." *Id.*

The Department rested its case early on the third day of trial. K.I. did not appear that day, and accordingly, presented no defense. At the close of trial, the court terminated K.I.'s parental rights to her three children.

K.I. appeals.

## ANALYSIS

K.I. argues the trial court violated her statutory and constitutional right to counsel when it terminated her parental rights after a trial during which she proceeded pro se.

"Parents have a fundamental liberty interest in the care and custody of their children, protected by the Fourteenth Amendment and article I, section 3 of the

8

Washington State Constitution." *In re Dependency of V.R.R.*, 134 Wn. App. 573, 581, 141 P.3d 85 (2006) (citing U.S. CONST. amend. XIV; CONST. art. I, § 3; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Welfare of Myricks*, 85 Wn.2d 252, 533 P.2d 841 (1975); *In re Welfare of Luscier*, 84 Wn.2d 135, 137, 524 P.2d 906 (1974), *abrogated on other grounds by Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). "Recognizing the significant interests involved in the termination of parental rights, state law guarantees a parent the right to counsel." *In re V.R.R.*, 134 Wn. App. at 581 (citing RCW 13.34.090(2)); *In re Dependency of Grove*, 127 Wn.2d 221, 232, 897 P.2d 1252 (1995)). The statutory right to counsel is provided in RCW 13.34.090(2), which states:

> At all stages of a proceeding in which a child is alleged to be dependent, the child's parent . . . has the right to be represented by counsel, and if indigent, to have counsel appointed for him or her by the court. Unless waived in court, counsel shall be provided to the child's parent, guardian, or legal custodian, if such person (a) has appeared in the proceeding or requested the court to appoint counsel and (b) is financially unable to obtain counsel because of indigency.

"But the right to counsel is not absolute." *In re V.R.R.*, 134 Wn. App. at 581. A parent may lose her right to counsel by (1) voluntarily relinquishing it, (2) waiving it by conduct, or (3) forfeiting it through "'extremely dilatory conduct.'" *In re Welfare of G.E.*, 116 Wn. App. 326, 334, 65 P.3d 1219 (2003) (quoting *City of Tacoma v. Bishop*, 82 Wn. App. 850, 859, 920 P.2d 214 (1996)). Voluntary relinquishment of the right to counsel "is typically 'indicated by an affirmative, verbal request.'" *State ex rel. Schmitz*

*v. Knight*, 142 Wn. App. 291, 295, 174 P.3d 1198 (2007) (quoting *Bishop*, 82 Wn. App. at 858). "At the opposite end of the spectrum is forfeiture, which results in loss of the right to counsel regardless of intent" due to "extremely severe and dilatory conduct." *Id.* at 295. "Waiver by conduct lies in the middle, and combines elements of" voluntary relinquishment and forfeiture. *Id.* The Department does not contend K.I. voluntarily relinquished her right to counsel. Instead, it argues she waived it by her conduct or forfeited it by her extremely dilatory actions.

### *Waiver*

For a parent to waive her right to counsel by conduct, she must "be warned about the consequences of [her] actions, including the risks of proceeding pro se." *Bishop*, 82 Wn. App. at 859. The rationale is that once a parent "'has been warned that [s]he will lose [her] attorney if [s]he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel.'" *Id.* (quoting *United States v. Goldberg*, 67 F.3d 1092, 1100 (3rd Cir. 1995). Accordingly, after a warning, conduct that does not rise to the level of forfeiture may constitute waiver by conduct.

In this case, though K.I. received the orders of appointment containing a warning that failing to contact her attorney may result in relinquishment, there is no indication in the record that the trial court warned her of the risks of proceeding pro se. Accordingly, K.I. did not waive her right to counsel by conduct.

10

*Forfeiture*

The only question, then, is whether K.I. forfeited her right to counsel. "A parent can forfeit the right to counsel by extremely dilatory conduct" even if she is not warned about the consequences of such conduct. *In re Dependency of E.P.*, 136 Wn. App. 401, 405, 149 P.3d 440 (2006). Because of the harshness of the consequence, forfeiture "applies only in very limited circumstances." *Schmitz*, 142 Wn. App. at 295. This case presents two considerations that we find relevant to assessing dilatoriness: whether the parent is failing to communicate with his or her lawyer, and whether the parent is showing up for court.

Even delaying to contact counsel for months may not rise to the level of forfeiture. For example, in *Bishop*—the criminal case on which many Washington cases involving waiver or forfeiture of counsel in the context of parental termination rely—the defendant was advised on April 25 that trial would begin on June 27 and that he needed to contact the public defender's office to obtain counsel. 82 Wn. App. at 853. Two months later, on June 25, the defendant informed the trial court that he had not contacted the public defender's office. Trial was delayed until June 29, on which date the defendant again appeared without counsel. Trial was again delayed, this time until October 4. On October 4, over five months after the defendant was instructed to contact the public defender's office, the defendant appeared and moved for a continuance because he had still failed to obtain counsel (though he had at some point finally contacted the public

11

defender's office). The trial court denied his motion and proceeded to trial. On appeal, the court found that even in light of the extensive delay with minimal action on the part of the defendant, it was error to deny the motion to continue and to proceed to trial without counsel. In so finding, the court acknowledged it did not condone the defendant's behavior, but did not find it so egregious as to constitute forfeiture.

Similarly, in *Schmitz*, a case involving a defendant's failure to pay child support, the trial court refused the defendant's motion to continue so he could obtain counsel because it had referred him on "numerous occasions" to the public defender's office, and had granted many continuances so he could obtain counsel. 142 Wn. App. at 293. The trial court described the defendant's motion for continuance as "'game playing.'" *Id.* at 294. On appeal, the court acknowledged the defendant had been referred to the public defender's office numerous times and was manipulating the system, but still concluded his conduct was not so dilatory as to forfeit the right to counsel.

Under *Bishop* or *Schmitz*, K.I.'s conduct was not extreme enough to constitute forfeiture. In *Bishop*, the defendant delayed for five months to seek counsel. In both *Bishop* and *Schmitz*, the defendants were advised on numerous occasions to obtain counsel, and granted multiple continuances to do so. If no forfeiture was found in those cases, forfeiture cannot be found here where K.I. delayed only a total of 51 days in contacting her attorneys, and then delayed another 6 weeks after Ms. Farabee withdrew to

12

request another appointment. Such behavior, though dilatory, was not so extremely dilatory as to forfeit the right to counsel.

The State contends *Schmitz* is not applicable in this situation because that case did not involve the children's rights, and unlike the situation here, no balancing of the parents' and children's interests was required.

It also contends K.I.'s dilatory conduct is more comparable to the conduct of the parents in *In re Dependency of A.G.*, 93 Wn. App. 268, 968 P.2d 424 (1998) and *In re E.P.* In *In re A.G.*, the mother's counsel represented her for the four years before the Department filed for termination. 93 Wn. App. at 278. Because the whereabouts of the mother were unknown and she failed to attend hearings, notice of termination had to be served by publication and abode service. Once termination was filed, counsel lost all contact with the mother. Over the next six months, counsel tried to contact the mother through letters and by calling the phone number she had provided, but to no avail. On the first day of the termination trial, at which the mother did not appear, counsel moved to withdraw, and the trial court granted the motion, noting counsel's "'above and beyond'" efforts to contact the mother. *Id.* at 274. The appellate court upheld the trial court's decision, reasoning that because of the mother's inaction, counsel "could not effectively or ethically represent her through the termination trial." *Id.* at 278. It therefore found the trial court had not violated the mother's due process right to counsel by allowing counsel

13

to withdraw. Presumably the court found the mother had forfeited her right to counsel, though the opinion does not identify or analyze the ways in which one may lose the right.

In *In re E.P.*, a mother forfeited her right to counsel through much less egregious behavior. There, at some point between September and January, new counsel had been appointed for the mother, but by January, counsel reported a lack of contact with his client. 136 Wn. App. at 403-04. During that time, the mother appeared at two hearings, but failed to attend three others. At the end of February, the mother apparently contacted counsel, but then lost contact again. The termination trial began at the end of March. The mother did not appear, and having had no contact with her, counsel was permitted to withdraw. The appellate court upheld the trial court's decision under *In re A.G.*, finding that the mother's lawyer had no idea what the mother's position was in relation to her parental rights and "'could not effectively or ethically represent her in the termination trial.'" *Id.* at 405 (quoting *In re A.G.*, 93 Wn. App. at 278).

On the issue of the State's proposed "balancing" of the parents' and children's interests in assessing dilatoriness, other cases involving waiver or forfeiture of parental rights have applied *Bishop*, without suggesting that a different analysis applies. *E.g.*, *In re V.R.R.*, 134 Wn. App. 573; *Schmitz*, 142 Wn. App. 291; *In re G.E.*, 116 Wn. App. 326. Other cases mention that a child's interest in a stable home cannot be put on hold indefinitely when the parent continuously fails to appear in court or stay in contact with

14

her attorney, but do not explain how that right affects the analysis. *E.g., In re E.P.*, 136 Wn. App. 401; *In re A.G.*, 93 Wn. App. 268.

And this case is distinguishable from *In re A.G.* and *In re E.P.*, which the State asks us to apply. Here, K.I. admittedly did not want to work with Ms. Anderson. However, after explaining to K.I. that Ms. Anderson's duty was to advise K.I., even of difficult information, the trial court allowed Ms. Anderson to withdraw after only 20 days without contact. Instead, the trial court could have requested K.I. and Ms. Anderson attempt working together for a while longer before allowing Ms. Anderson to withdraw. But the trial court's language essentially indicated to K.I. that her desire for new counsel was completely acceptable; only after allowing Ms. Anderson to withdraw did the trial court express reluctance to appoint new counsel. K.I.'s behavior under such circumstances cannot be said to be extremely dilatory, and is not comparable to the situations in either *In re A.G.* or *In re E.P.*

Moreover, the trial court allowed Ms. Farabee to withdraw after only 31 days even though K.I. had attempted contact once, had been in jail for part of that time, and was not present at the hearing. In contrast, in *In re A.G.* the trial court allowed counsel to withdraw after no contact for six months; in *In re E.P.* the trial court allowed counsel to withdraw after no contact for between three and six months.

This case is further distinguishable from *In re E.P.* because there the mother was less engaged (missing at least three of five scheduled hearings and the trial) than K.I.,

15

who attended all but one hearing and appeared at trial. Further, the record shows that during the six weeks between Ms. Farabee's withdrawal and the scheduled trial date, K.I. attempted to retain counsel, but was unable to do so because it was so close to trial (an explanation we find credible due to the fact trial was to begin in six weeks). Unlike K.I., the mothers in *In re A.G.* and *In re E.P.* do not appear to have attempted to retain counsel. Overall, K.I.'s pattern of engagement in court hearings and the rapidity with which the trial court allowed appointed counsel to withdraw stand in contrast to the facts in *In re A.G.* and *In re E.P.*

Furthermore, contrary to the State's argument, K.I. did not cause the continuances in the trial dates. Though she initially requested a continuance to attend inpatient treatment, trial was ultimately continued due to the illness of the father's attorney. Trial was continued again after the Department filed for partial summary judgment, and then again to allow the guardian ad litem and Ms. Anderson time to properly prepare after being appointed close to the trial date. The record does not show K.I. caused the delays in trial.

Though K.I. should have requested counsel before October 16—when she essentially requested counsel, though not in so many words—or October 19, and though she should have made more significant efforts to contact Ms. Farabee, her conduct was not so extremely dilatory as to constitute forfeiture of the fundamental right to counsel.

16

No. 33924-6-III (consol. w/ No. 33925-4-III; No. 33926-2-III)
*In re Parental Rights to M.I.-S.*

The trial court erred when it allowed K.I. to proceed to trial without counsel. We reverse and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

17