[No. 77891-4.    En Banc.]
Argued January 23, 2007.    Decided February 14, 2008.

THE STATE OF WASHINGTON, *Respondent*, v. JERRIE L. VANDER HOUWEN, *Petitioner*.

*Russell J. Mazzola*, for petitioner.

*Ronald S. Zirkle*, *Prosecuting Attorney*, and *Kenneth L. Ramm, Jr.*, *Deputy*, for respondent.

*Robert M. McKenna*, *Attorney General*, and *Kathryn B. McLeod*, *Assistant*, on behalf of Department of Fish and Wildlife, amicus curiae.

¶1 J.M. JOHNSON, J. —The owner of severely damaged orchards was convicted for shooting some of the responsible animals after repeated requests for state remedies were unsuccessful. We reverse both the Court of Appeals and the trial court, and hold that it was error to deny defendant use of jury instructions long held appropriate for such defense.[1] We reaffirm the holding that

> it may be justly said that one who kills an elk in defense of himself or his property, if such a killing was reasonably necessary for such purpose, is not guilty of violating the law.

---

[1] *State v. Burk*, 114 Wash. 370, 376, 195 P. 16 (1921).

*State v. Burk*, 114 Wash. 370, 376, 195 P. 16 (1921). Although a fact finder may take into account measures provided by the wildlife code and the Department of Fish and Wildlife (Department) when determining whether resorting to killing protected game was "reasonably necessary," Washington's legislatively enacted wildlife code does not abrogate a property owner's constitutional right to protect his property from destructive game. In this case, a "necessity" instruction was given in place of the jury instructions approved by *Burk*. The newer instruction, however, provided inadequate protection of Jerrie Vander Houwen's constitutional right to protect his property and impermissibly placed the burden of proof on the defendant rather than the State. Additionally, Vander Houwen's conviction on two counts of killing game out of season is reversed because the jury was not given any unanimity instruction, and the State did not specifically identify the alleged criminal acts. These flaws in the trial process represent constitutional error, and we reverse and vacate.

¶2 We review de novo alleged errors of law in jury instructions. *Del Rosario v. Del Rosario*, 152 Wn.2d 375, 382, 97 P.3d 11 (2004). Jury instructions are improper if they do not permit the defendant to argue his theories of the case, mislead the jury, or do not properly inform the jury of the applicable law. *Id.*

FACTS

¶3 Vander Houwen owns cherry and apple orchards in the Tieton area of eastern Washington. In the westernmost portion of his land, he grew a 37-acre block of cherry trees. Clerk's Papers (CP) at 202. During 1998 and the fall of 1999, herds of elk repeatedly came through inadequate fences constructed by the Department to prevent damage to Vander Houwen's orchard. *Id.* The elk caused substantial damage, with Vander Houwen's expert assessing his

actual past losses at $13,488,[2] potential tree loss at $6,375,[3] and future cherry production losses at $236,000.[4] *See* Verbatim Report of Proceedings at 15-25. The State did not object to or contradict these estimates at trial. *Id.*

¶4 In 1998 and 1999, due to the failure of the State to act, Vander Houwen repaired the fences previously built by the Department and used feeding hay in an attempt to minimize the damage to his property caused by the elk. CP at 202-04. In the fall of 1999 and winter of 2000, the elk continued to migrate through his orchard, feeding on his orchard trees. *Id.* During this time period, Vander Houwen contacted the Department on four different occasions to seek its assistance in stopping the substantial damage that the elk were causing. *Id.* Despite Vander Houwen's repeated requests, the Department did nothing to address the problem.

¶5 On January 12, 2000, Vander Houwen again contacted the Department and told Officer Bereis that there had been about 40 elk in his orchard on the previous two days. CP at 188. He explained that shooting over their heads was not deterring the elk, and they were continuing to eat his trees. *Id.* The officer's response was that he would attempt to organize Department efforts to help, but that he could not do anything for about a week due to the upcoming Martin Luther King, Jr., holiday. *Id.* Vander Houwen told the agent that he could not continue to wait, and that he would have to start shooting directly at the elk. *Id.*

¶6 On January 27, two weeks later, the Department received a report that dead elk were seen in the vicinity of

---

[2] The actual damage figure describes 425 cherry trees, 56 bins of apples, and 228 sprinklers that were completely destroyed by the elk.

[3] The potential tree loss describes an additional 800 severely damaged cherry trees that had not yet died.

[4] The future production figure describes the cherry production loss sustained by Mr. Vander Houwen's 37 acres. Normally, the trees produce 8 to 12 tons of cherries per acre. Cherry trees achieve maximum production during their fifth and sixth year. Here, Mr. Vander Houwen's estimated cherry production would be halved until 2005 (when replanted and damaged trees would achieve maximum production).

Vander Houwen's orchard. CP at 203. The Department had taken no further action in the intervening weeks. *Id.* Two officers went to the orchard where they found 10 dead elk. *Id.* Using a metal detector, they found .270 caliber slugs in two of the elk. *Id.* Vander Houwen admitted that he shot at the elk and that he owned a .270 caliber rifle, but that he was unable to tell whether he had killed any of the elk. CP at 20.

¶7 The State subsequently charged Vander Houwen in Yakima County District Court under 10 different cause numbers: 10 counts of waste of wildlife and 10 counts of killing game out of season. CP at 205-06. The record shows no further Department efforts to identify the guns or shooter. The elk were not differentiated or labeled or attached to a specific cause number. CP at 203.

¶8 The defense asked the trial court to give the *Burk* jury instructions derived from our court's earlier opinion. Proposed jury instruction 1 states, "One who kills elk in defense of his or her property is not guilty of violating the law if such killing was reasonably necessary for such purpose." CP at 181. Proposed jury instruction 7 states, "One who kills elk in defense of his or her property is not guilty of violating the law if such killing was reasonably necessary for the defense of his or her property." CP at 236.

¶9 When the trial court rejected these proposed instructions, the defense requested an alternate "necessity" instruction, jury instruction 15. CP at 223. This "necessity" instruction was based on 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 18.02 (2d ed. supp. 2005) and states in relevant part:

> Necessity is a defense to a charge of unlawful big game hunting in the second degree and/or waste of wildlife in the first degree if:
>
> (1) the defendant reasonably believed the commission of the crime was necessary to avoid or minimize a harm; and
>
> (2) the harm sought to be avoided was greater than the harm resulting from a violation of the law;

(3) the threatened harm was not brought about by the defendant; and

(4) no reasonable legal alternative existed.

*This defense must be established by a preponderance of the evidence.* Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty.

CP at 223 (emphasis added). The trial court gave the jury this "necessity" instruction instead of the originally requested *Burk* instruction. The jury acquitted Vander Houwen of all 10 counts of waste of wildlife and of 8 counts of killing game out of season. CP at 204. The jury convicted on two counts of killing game out of season, cause numbers Y00-00045 and Y00-00046. *Id.* The record, however, discloses no rationale for the conviction cause numbers and for whether the convictions were in any way related to the two elk in which the .270 caliber bullets were found.

¶10 Vander Houwen appealed his conviction on two counts of unlawful hunting, and the Court of Appeals affirmed both counts. *State v. Vander Houwen*, 128 Wn. App. 806, 115 P.3d 399 (2005). We granted review at 157 Wn.2d 1021 (2006).

ISSUES

¶11 The relevant issues are (1) Whether the trial court erred in refusing to give the *Burk* instruction, instead allowing only the "necessity" instruction? and (2) Whether the trial court erred when it failed to provide the jury a unanimity jury instruction as a means to associate specific evidence with specific counts of killing game out of season?

ANALYSIS

Constitutional Instruction

¶12 Vander Houwen contends that he had a constitutional right to defend his property from wildlife damage

under Washington Constitution article I, section 3.[5] He claims that the trial court erred when it excluded the *Burk* instructions approved by this court because those instructions explain the constitutionally protected basis for his defense. We hold that the *Burk* instructions continue to be a correct statement of law and should have been given to the jury.

¶13 In *Burk*, we held that landowners must be able to defend their property against destructive game. 114 Wash. at 376; *see also Cook v. State*, 192 Wash. 602, 611, 74 P.2d 199 (1937). In *Burk*, the court clearly stated, "it may be justly said that one who kills an elk in defense of himself or his property, if such killing was reasonably necessary for such purpose, is not guilty of violating the law." 114 Wash. at 376. This holding illustrates more than a common law principle; rather it recognizes "a *constitutional right* to show, if he could, that it was reasonably necessary for him to kill these elk for the protection of his property." *Id.* (emphasis added). We reaffirmed this constitutional right in *Cook*, holding that the Cooks would have been justified in killing animals that had damaged their property. *See* 192 Wash. at 611. Neither case has been overruled; thus the holding that one may reasonably defend property against wildlife damage is still correct law in Washington.

¶14 Although *Burk* remains an accurate declaration of a property owner's constitutional right to kill protected game when "reasonably necessary" to protect his property, what is "reasonably necessary" may include considerations not apparent in 1921. The Fish and Wildlife Code of Washington is now codified as Title 77 RCW. It includes chapter 77.36 RCW (wildlife damage), provisions that seek to minimize and resolve conflicts between humans and wildlife by authorizing the Department to provide assistance in dealing with wildlife and compensation for damage caused by wildlife. The Department has author-

---

[5] Article I, section 3, "Personal Rights." "No person shall be deprived of life, liberty, or property, without due process of law."

ity to construct fencing to protect private property. RCW 77.36.030 allows a property owner to obtain oral permission from the Department to kill protected wildlife in an emergency situation. RCW 77.36.040(1) provides for compensation of up to $10,000 per claim for damages caused by elk. RCW 77.12.240 permits the director of the Department to "authorize the removal or killing of wildlife that is destroying or injuring property."

¶15 These provisions do not abrogate a property owner's constitutional right to protect his property, but they could reduce the likelihood that resorting to lethal means to protect property is "reasonably necessary." A property owner need not demonstrate exhaustion of every remedy, but a fact finder may take into consideration the measures provided by the wildlife code and the Department when determining what is "reasonably necessary."

¶16 The wildlife code also declares that "[i]t is in the best interests of the state for the department of fish and wildlife to respond quickly to wildlife damage complaints and to work with these landowners and tenants to minimize and/or prevent damages and conflicts," RCW 77.36-.005(2). Despite requests, the Department in this case did not act, rendering it likely that it was "reasonably necessary" for Vander Houwen to exercise his constitutional right to defend his property. The Department did not maintain its previously built fences, and although Vander Houwen repaired the fences himself, the fences proved ineffective in deterring the invading elk. Vander Houwen made numerous good faith efforts to inform the Department of the emergency situation, but it refused to help until it would certainly have (again) been too late. Pet. for Review, App. A-1, at 1.

¶17 Moreover, the State's compensatory scheme did not give Vander Houwen effective relief due to its cap on financial damages. Vander Houwen's property was repeatedly and dramatically damaged for an estimated total loss of $249,488. The statutory remedy for elk damage is capped at $10,000 per claim. RCW 77.36.040(1).

¶18 A property owner's dilemma is apparent in this case: either he can exercise the constitutional right to protect his property and possibly face criminal charges, or he can file a claim and hope that elk do not inflict massive financial damage. One similar case, *Cross v. State*, 370 P.2d 371, 378 (Wyo. 1962), addresses this problem:

> We hardly think that a landowner should be compelled to waive his constitutional rights by filing a claim for damages, perhaps every month, every two months, every year, or at other intervals, and recover damages perhaps after protracted litigation.

¶19 In light of Vander Houwen's constitutional right to show he acted to defend his property, our next inquiry is whether the *Burk* instructions this court approved are adequately replaced with a "necessity" instruction. In *Burk*, asserting this constitutional right required defendant's actions to be "reasonably necessary." *Burk*, 114 Wash. at 376. The burden of persuasion fell on the defendant, in conformity with turn of the century due process rules. *See id.* Modern due process analysis, however, supports a different burden placement. The Court of Appeals interpreted a property owner's constitutional right to defend his property as sufficiently protected by a "necessity" instruction with defendant bearing the burden of proof. We disagree.

¶20 Once a property owner charged with unlawful hunting or waste of wildlife presents sufficient evidence to support a justification instruction for protection of property, the burden of persuasion to prove beyond a reasonable doubt the absence of this justification shifts to the State. The justification of protection of property is of unique constitutional dimension. *Cf. State v. Lively*, 130 Wn.2d 1, 11, 921 P.2d 1035 (1996). A property owner has always had the right to protect his property from destructive animals. Historically, killing a destructive animal, unlike offenses such as killing a human or stealing goods, was not a crime. However, in an attempt to maintain the public resource of certain animal populations, the legislature provided rules for hunting protected wildlife and has made killing protected game outside of established regulations a crime. The

legislature also has given the Department the responsibility to help prevent property damage from invading animals. But as we previously declared, no legislative scheme can abrogate a property owner's constitutional right to protect his property. Because of this right, the State should bear the burden of proving that convicting a property owner of unlawful hunting or waste of wildlife did not deprive the property owner of his fundamental right to take actions reasonably necessary to protect his property.

¶21 This burden placement is consistent with the burden shifting scheme commonly applied to the justification for defense of property. 2 PAUL H. ROBINSON, CRIMINAL LAW DEFENSES § 134, at 105, 108-09 (1984) ("Every American jurisdiction recognizes a justification for the defense of property. . . . The burden of production for the defense of property is always on the defendant. The burden of persuasion is nearly always on the state, beyond a reasonable doubt." (footnote omitted)).

¶22 We hold that when a property owner charged with unlawful hunting or waste of wildlife presents sufficient evidence that he exercised his constitutional right to protect his property from destructive game, the burden shifts to the State to disprove this justification.

¶23 Here, Vander Houwen easily met his burden by showing previous significant and recurring damage to his orchards and inaction by the Department in assisting him in protecting his property. Since Vander Houwen stated facts sufficient for a justification instruction, the State had the burden to prove that Vander Houwen's actions were not justified.

Invited Error

¶24 The Court of Appeals held that because Vander Houwen also submitted the "necessity" instruction, he is estopped from complaining by the doctrine of invited error. *Vander Houwen,* 128 Wn. App. at 812. We disagree. This court has declared that " '[a] *party may not request a[ ] [jury] instruction and later complain on appeal that the*

*requested information was given.' " State v. Henderson,* 114 Wn.2d 867, 870, 792 P.2d 514 (1990) (quoting *State v. Boyer,* 91 Wn.2d 342, 344-45, 588 P.2d 1151 (1979)). In *State v. Studd,* 137 Wn.2d 533, 552, 973 P.2d 1049 (1999), however, we recognized an exception to this general doctrine of invited error and held that an appellate court may review instructions that a petitioner proposed if the petitioner originally requested correct instructions that were rejected by the court. We specifically declared that "[t]he fact that [the petitioner] proposed . . . the . . . instruction is no bar to his challenge to it, for he also proposed a curative instruction that was not given and, thus, did not invite the error that he complains of now." *Id.*

¶25 In the instant case, Vander Houwen originally requested jury instructions that correctly stated his constitutional right to protect his property. Because the court refused his original instructions, Vander Houwen was faced with either submitting the case to the jury with no justification instruction at all, or else requesting an alternate instruction that, while inadequate, provided at least some support for his defense. We hold that the doctrine of invited error does not bar Vander Houwen's challenge to the jury instructions.

Unanimity Instruction

¶26 The Court of Appeals improperly dismissed Vander Houwen's claim for a unanimity jury instruction.[6] In the absence of the unanimity jury instruction, each juror could have convicted Vander Houwen based on different criminal acts because the State did not properly provide evidence to tie each cause number and alleged act.[7] We previously have held that

---

[6] The Court of Appeals refused to address Vander Houwen's unanimity argument, holding that it was not properly before that court. However, we granted review of this issue and find that it was properly raised below in Vander Houwen's appeal before the superior court and his briefing before the Court of Appeals. *See* CP at 27-30; Br. of Pet'r at 15-16; Reply Br. to Br. of Resp't at 8-10.

[7] Agreed finding of fact 13 states, "That there was no evidence presented by the State that related a specific count of a specific complaint to a charged specific dead elk."

> [t]o ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

*State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988).

¶27 Moreover, when the State fails to make proper identification of the specific act charged and the trial court fails to instruct the jury on unanimity, there is constitutional error. "The error stems from the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." *Id.*

¶28 Vander Houwen was charged under 10 different cause numbers. Under each cause number, he was charged with two counts: unlawful big game hunting in the second degree (count I) and waste of wildlife in the first degree (count II). CP at 35, 128-29. It appears the only evidence distinguishing one dead elk from another was testimony that the State found .270 caliber slugs in two of the elk. Vander Houwen admitted he owned a .270 caliber rifle and that he had shot at the elk. But he was unable to tell whether he had hit any of the elk. CP at 20. The State provided no forensic evidence to tie the two dead elk to shots from his weapon.

¶29 At trial, Vander Houwen was acquitted on all 10 counts of waste of wildlife, and he was found guilty of only 2 of the 10 counts of unlawful hunting. Cause No. Y00-00045; Cause No. Y00-00046. The absence of a unanimity instruction, along with the State's failure to identify specific acts on which to charge, is fatal. The rule in Washington provides that conviction on a criminal charge requires a *unanimous* decision by the jury that the defendant committed the criminal act. *State v. Camarillo*, 115 Wn.2d 60, 63-64, 794 P.2d 850 (1990). Because the State did not articulate which cause number went with each elk, it is impossible to ensure that all of the jurors voted to convict based on the same two dead elk.

¶30 The issue is constitutional; the jury has responsibility to connect the evidence to the respective counts. Here there was no unanimity instruction or evidence tying any elk to a particular cause number. *See Kitchen*, 110 Wn.2d at 411. In other words, while the jury *may have* acted in unison, we do not have a verdict that shows that they did so. The trial court erred when it failed to require unanimity and to provide the jury with the means to associate the evidence with specific counts.

¶31 Moreover, the unanimity error was not harmless since this jury acquitted Vander Houwen on most of the charges. An error of constitutional proportions will never be considered harmless unless it was harmless beyond a reasonable doubt. *See State v. Spencer*, 111 Wn. App. 401, 408, 45 P.3d 209 (2002) (noting that "reversal is required unless no rational jury could have a reasonable doubt that the defendant would have been convicted even if the error had not taken place").

¶32 We seldom overturn a jury's verdict. Generally, when guided by proper jury instructions, we maintain that jurors are in the best position to determine guilt or innocence, *e.g., State v. Ng*, 110 Wn.2d 32, 750 P.2d 632 (1988).

¶33 We do not second guess the jury but reaffirm the constitutional requirement of unanimity in a criminal verdict. *See Kitchen*, 110 Wn.2d at 409. In this case, it is neither inconsistency nor insufficiency of the evidence that renders the verdict problematic. Instead, the error lies in the inability of the State to assure us that 12 jurors who acquitted Vander Houwen of most charges agreed that the same underlying criminal act, proved beyond a reasonable doubt, attached to the two counts of conviction.[8] This clear constitutional error requires reversal.

---

[8] This outcome presents no conflict with the standard of review we set for alternative means cases. In those cases, unanimity is not required as to the means by which the crime was committed, so long as substantial evidence supports each alternative means. *Kitchen*, 110 Wn.2d at 410.

CONCLUSION

¶34 This defendant was denied jury instructions regarding his constitutional right to reasonably protect his property. Instead, Vander Houwen was required to carry an improper burden of proof due to a complicated "necessity" instruction. In Washington, the *Burk* instructions continue to represent a correct statement of the law and are not abrogated by the legislature's protections for wildlife and property owners in Title 77 RCW.

¶35 The trial court also erred by not giving the jury a unanimity instruction. This allowed the possibility that some jurors found guilt based on Vander Houwen's shooting a particular elk and other jurors predicated guilt on different elk. The jury actually acquitted defendant on the vast majority of charges. There is no assurance that the two convictions were the unanimous decision of all jurors finding guilt for the same criminal act because of lack of a unanimity instruction and the State's failure to tie the evidence to particular animals.

¶36 We reverse and vacate the two convictions.

ALEXANDER, C.J.; C. JOHNSON, SANDERS, and OWENS, JJ.; and BRIDGE, J. PRO TEM., concur.

¶37 CHAMBERS, J. (concurring) — I agree that landowners have a right to defend their property against marauding game. *See State v. Burk*, 114 Wash. 370, 195 P. 16 (1921); *see also Cook v. State*, 192 Wash. 602, 74 P.2d 199 (1937). I write separately because defense of property is like any other affirmative defense that does not negate an element of the crime. The burden is properly on the property owner to demonstrate that the killing of an animal was necessary.

¶38 I cannot join the majority's mistaken assumption that defense of property from wild animals is like the defense of self-defense against murder. "The State bears the burden of proving beyond a reasonable doubt the absence of

a defense *if the absence of such defense is an ingredient of the offense and there is some evidence of the defense." State v. McCullum,* 98 Wn.2d 484, 490, 656 P.2d 1064 (1983) (emphasis added) (citing *Patterson v. New York,* 432 U.S. 197, 214-15, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977)). Defenses like self-defense negate an element of the crime: intent. *McCullum,* 98 Wn.2d at 495. The necessity defense does not negate any element of unlawful hunting or waste of wildlife. *See* RCW 77.15.410, .170. The reasonable necessity instruction given to the jury was insufficient as given, but it did not improperly shift the burden.

¶39 In my view, in order to be a correct statement of the law and to allow the parties to argue their respective theories of the case, the jury should have been instructed that animals may be killed if necessary to protect *property.* Jerrie Vander Houwen proposed two instructions that would have accomplished that. *See* Clerk's Papers (CP) at 181 ("One who kills elk in defense of his or her property is not guilty of violating the law if such killing was reasonably necessary for such purpose."[9]); *see also* CP at 236 ("One who kills elk in defense of his or her property is not guilty of violating the law if such killing was reasonably necessary for the defense of his or her property.") The trial court rejected both of these instructions and instead gave only the "necessity" instruction based upon 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 18.02 (2d ed. supp. 2008) (WPIC):

Necessity is a defense to a charge of unlawful big game hunting in the second degree and/or waste of wildlife in the first degree if

(1) the defendant reasonably believed the commission of the crime was necessary to avoid or minimize a harm; and

(2) the harm sought to be avoided was greater than the harm resulting from a violation of the law;

(3) the threatened harm was not brought about by the defendant; and

---

[9] The instruction was written upon to add "the protection of his or her property." That does not change my analysis.

(4) no reasonable legal alternative existed.

This defense must be established by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty.

CP at 223.

¶40 This instruction correctly states the law. But it does not completely state the law. Without being given one of Vander Houwen's requested instructions, the jury was never instructed that the law recognized that wild animals could be killed if necessary to protect *property*. The "necessity" instruction was simply without sufficient context. In conjunction with either of Vander Houwen's requested instructions, the WPIC "necessity" instruction would have been not only appropriate but probably necessary to define and help the jury evaluate both "reasonable" and "necessary" in the context of a defense to a crime.

¶41 A property owner's right to protect his or her property from wild animals is not absolute and must be evaluated in context of other laws that apply to such animals and the reasonable legal alternative available to the property owner. The instructions as given did not allow Vander Houwen to adequately present his case. Therefore, I concur in result. It was error not to give one of Vander Houwen's requested instructions that it was a defense to kill wild elk for the reasonably necessary protection of his property.

MADSEN and FAIRHURST, JJ., concur with CHAMBERS, J.