**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/waresolver.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 15, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 15, 2021

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, ex rel. LAWRENCE H. HASKELL, | ) ) ) | No. 98719-0 |
| Respondent, | ) ) | |
| | ) | En Banc |
| v. | ) ) | |
| SPOKANE COUNTY DISTRICT COURT, JUDGE DEBRA R. HAYES, | ) ) ) | Filed July 15, 2021 |
| Defendants, | ) ) | |
| GEORGE E. TAYLOR, | ) ) | |
| Petitioner. | ) ) ) | |

OWENS, J. — Reverend George Taylor has long been a climate activist. Throughout the years he has fought climate change by protesting, contacting legislative officials, and utilizing the initiative process. He is particularly concerned with coal and oil trains, and the dangers they present to public safety and the environment. Rev. Taylor has made many attempts to mitigate the risks of coal and oil trains passing through Spokane. After repeated efforts without effect, he organized a peaceful protest on Burlington Northern Santa Fe (BNSF Railway) railroad tracks. As

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

a result, Rev. Taylor was charged with criminal trespass in the second degree and

unlawful obstruction of a train. In response, he raised the necessity defense.

Rev. Taylor believes his actions were necessary to prevent the imminent harms

of climate change and train derailment. Whether the necessity defense is ultimately

available to him depends on when a defendant has demonstrated that there are no

reasonable legal alternatives to violating the law.

This case comes before the court due to a conflict between Division Three and

Division One of the Court of Appeals in *State v. Ward*, 8 Wn. App. 2d 365, 438 P.3d

588, *review denied*, 193 Wn.2d 1031 (2019). Division Three issued a split decision

affirming the superior court, holding that Rev. Taylor could not present the necessity

defense because "[t]here are always reasonable legal alternatives to disobeying

constitutional laws." *State ex rel. Haskell v. Spokane County Dist. Court*, 13 Wn. App.

2d 573, 586, 465 P.3d 343 (2020). While there are always alternatives in the abstract,

an alternative that has repeatedly failed when attempted is not a reasonable alternative.

Because Rev. Taylor raises an issue of fact whether his actions were reasonable under

the necessity defense, given his previous ineffective efforts to exercise legal

alternatives, we reverse on this issue.

Additionally, this case asks whether granting an ex parte petition for writ of

review under RCW 7.16.040 is a discretionary decision under RCW 4.12.050. Here,

the plain language of the statute and our previous decisions regarding RCW 4.12.050

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

demonstrate that granting the writ under RCW 7.16.040 is discretionary, making Rev.

Taylor's notice of disqualification untimely.

FACTS

On September 29, 2016, Rev. Taylor safely engaged in civil disobedience by

protesting on BNSF Railway property. Rev. Taylor was warned by law enforcement

that he would face arrest if he did not leave. Rev. Taylor did not leave and was

peacefully arrested. The State charged him with misdemeanors: RCW 9A.52.080

(criminal trespass) and RCW 81.48.020 (unlawful obstruction of a train). Rev. Taylor

provided notice that he intended to pursue a necessity defense at trial. He believed his

actions were necessary to avoid or minimize the imminent danger of climate change

and the imminent risk of danger to Spokane citizens in the downtown area where

BNSF Railway transports volatile oil.

The district court judge held an extensive evidentiary hearing. Dr. Steven

Running, professor of global ecology at the University of Montana, testified about the

direct threat that coal and oil consumption poses to the environment. Tom Hastings,

assistant professor of conflict resolution at Portland State University, testified about

the history and effectiveness of nonviolent civil disobedience. He explained how civil

disobedience could be equally effective "for [achieving] environmental protections"

when other means have failed. Clerk's Papers (CP) at 12-13, 93-119. Finally Fred

Millar, a recognized international analyst in transportation and accident prevention,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

offered evidence about the specific harms of train derailment. He explained how these events have occurred with "trains carrying coal and oil products in Montana and Oregon, and involved trains that traveled through Spokane." CP at 13. The district court judge then granted Rev. Taylor's motion to present the necessity defense.

The State filed an ex parte petition for a writ of review of that decision in the superior court, which was granted on March 30, 2018. Rev. Taylor was not given notice of the hearing in which the writ was presented to the judge nor was defense counsel advised about which Spokane County superior court judge would preside over the ex parte proceeding. The petition was subsequently granted.

On April 4, 2018, merely days after the ex parte petition was granted, Rev. Taylor filed a notice to disqualify the superior court judge. The judge heard argument and ruled that the notice of disqualification was untimely under RCW 4.12.050 because he had already made a discretionary decision by granting the writ of review. On November 15, 2018, the superior court reversed the district court's decision to allow the necessity defense and rejected the argument that legal alternatives must be "effective" in order to be reasonable. Rev. Taylor moved for discretionary review in Division Three. Division Three issued a split decision affirming the superior court. *State ex rel. Haskell*, 13 Wn. App. 2d at 580. We granted discretionary review. *State v. Spokane County Dist. Court*, 196 Wn.2d 1016 (2020).

*State v. Spokane County Dist. Court & Reverend George Taylor*
No. 98719-0

ISSUES

I.       Whether the superior court judge erred in denying Rev. Taylor's notice of disqualification?

II.      Whether Rev. Taylor was entitled to present the necessity defense?

ANALYSIS

I.  *The Superior Court Properly Rejected Rev. Taylor's Notice of Disqualification*

RCW 4.12.050 allows "[a]ny party to or any attorney appearing in any action or proceeding in a superior court [to] disqualify a judge from hearing the matter, subject to these limitations: (a) Notice of disqualification must be filed and called to the attention of the judge before the judge has made any discretionary ruling in the case." RCW 4.12.050(2) states:

> Even though they may involve discretion, the following actions by a judge do not cause the loss of the right to file a notice of disqualification against that judge: Arranging the calendar, setting a date for a hearing or trial, ruling on an agreed continuance, issuing an arrest warrant, presiding over criminal preliminary proceedings under CrR 3.2.1, arraigning the accused, fixing bail, and presiding over juvenile detention and release hearings under JuCR 7.3 and 7.4.

Rev. Taylor argues that the ex parte writ of review under RCW 7.16.040 is either nondiscretionary or akin to those actions that involved discretion but are excluded from the definition of "discretionary rulings." RCW 4.12.050(2). In the alternative, Rev. Taylor argues that constitutional due process at a minimum requires

5

that he have the opportunity to present the notice of disqualification, even if the judge exercised some form of discretion when he signed off on the previous ex parte order.

Without doubt, "[t]hose coming before the court have a fundamental right to an impartial decision-maker." *Godfrey v. Ste. Michelle Wine Estates Ltd.*, 194 Wn.2d 957, 959, 453 P.3d 992 (2019). "To protect this fundamental right, Washington statutes liberally allow litigants to disqualify a judge assigned to their case without establishing prejudice—but, usually, only before that judge has made a discretionary ruling or order in the case." *Id.* (discussing the history of RCW 4.12.040, .050). Therefore, we must decide whether Rev. Taylor's notice of disqualification was filed before a discretionary decision was made.

A. *A Writ of Review under RCW 7.16.040 Is a Discretionary Decision*

We have consistently stated, for the purpose of RCW 4.12.050, that "the substance and impact of a request is the most relevant consideration for assessing whether discretion is employed in ruling on the request, *regardless of what form the request takes*." *State v. Lile*, 188 Wn.2d 766, 778, 398 P.3d 1052 (2017); *see also State v. Parra*, 122 Wn.2d 590, 597-603, 859 P.2d 1231 (1993). In *Lile*, we held that an order granting a joint trial continuance was discretionary because it required the judge to "'consider various factors, such as diligence, materiality, due process, a need for an orderly procedure, and the possible impact of the result on the trial.'" 188 Wn.2d at 776 (internal quotation marks omitted) (quoting *In re Recall of Lindquist*,

172 Wn.2d 120, 130, 258 P.3d 9 (2011)).  These same factors demonstrate that a RCW 7.16.040 writ of review is a request for the superior court to exercise its discretion because granting this writ necessarily involves many of the same factors.

RCW 7.16.040 lays out multiple factors that establish grounds for granting this writ.  Importantly, the movant must establish "there is no appeal, *nor in the judgment of the court*, any plain, speedy and adequate remedy at law."  RCW 7.16.040 (emphasis added).  By the plain text of this statute, the reviewing court is asked to exercise its judgment and to determine whether intervention is necessary because otherwise there is no other adequate remedy available.  The court must weigh available remedies because a "remedy is not inadequate merely because it is attended with delay, expense, annoyance, or even some hardship."  *State ex rel. O'Brien v. Police Court*, 14 Wn.2d 340, 347, 128 P.2d 332 (1942).  In essence, the superior court must determine whether it is necessary to exercise this extraordinary jurisdiction.  *Id*. at 348.

Couched within the decision to grant a writ of review is the discretionary decision of whether to stay the proceedings of the lower court.  RCW 7.16.080.  The statute's plain text invokes "the sound discretion of the court."  *Id*.  In making this decision, the superior court will naturally consider the materiality of the issue and the impact of the result on trial.  Otherwise, there is no reason to issue a stay.

Further, this writ does not fit within the statutory exception of those discretionary decisions that preserve the right to file a notice of disqualification.  This

7

*State v. Spokane County Dist. Court & Reverend George Taylor*
No. 98719-0

writ is not a matter of arranging the calendar and dates for pretrial motions. While there is some modicum of discretion in deciding which date to set a hearing, a judge must ultimately set court dates; in contrast, courts are not required to exercise the extraordinary jurisdiction of reviewing interlocutory district court rulings by granting a writ of review. *See State ex rel. O'Brien*, 14 Wn.2d at 347.

B. *Due Process Is Not Implicated Here*

Rev. Taylor asserts that *City of Seattle v. Agrellas*, 80 Wn. App. 130, 906 P.2d 995 (1995), and *City of Seattle v. Klein*, 161 Wn.2d 554, 166 P.3d 1149 (2007), establish that a defendant must be given notice prior to deprivation of a substantial right. While true in those cases, the principle is inapplicable here. The rights the defendants were deprived of in those cases were of a constitutional dimension. *Agrellas* involved a defendant being deprived of the constitutional right to a speedy trial. 80 Wn. App. at 136-37. And *Klein* involved the defendant being deprived of the constitutional right to an appeal. 161 Wn.2d at 566-67. As a result, the "separate constitutional guaranty of due process" was violated because the constitutional rights of appeal and speedy trial were denied without notice. *Id*.

Here, Rev. Taylor was not denied due process because he was not denied a constitutional right. "The right to peremptory removal of a judge without substantiating a claim of actual prejudice is not of constitutional dimension, but statutory, flowing from RCW 4.12.050." *State v. Gentry*, 183 Wn.2d 749, 760, 356

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

P.3d 714 (2015).  In contrast, Rev. Taylor still had the constitutional due process right to disqualify a judge under the appearance of fairness doctrine.  "The appearance of fairness doctrine provides that 'judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned.'"  *Id.* at 761-62 (quoting *Sherman v. State*, 128 Wn.2d 164, 188, 905 P.2d 355 (1995)).  This constitutional right was still available to Rev. Taylor, despite being denied RCW 4.12.050.  If Rev. Taylor was also prevented from raising the appearance of fairness doctrine because a discretionary decision had already been made, then there is arguably a harm of constitutional magnitude.  But Rev. Taylor's constitutional right to due process was not violated because he could still raise this separate appearance of fairness argument to disqualify the superior court judge.

Therefore, we hold that Rev. Taylor's notice of disqualification is untimely and he was not denied due process.

II. *Rev. Taylor Is Entitled To Present the Necessity Defense*

Rev. Taylor argues that the superior court denied his constitutional right to present a defense when it ruled that he could not assert the necessity defense.  We review de novo whether a defendant has been denied his constitutional right to present a defense.  *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).  Within this decision we must determine whether the defendant proffered sufficient evidence to merit presentation of the necessity defense to the jury.  *State v. Fry*, 168 Wn.2d 1, 11,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

228 P.3d 1 (2010) (plurality opinion). In doing so, we interpret the evidence most strongly in favor of the defendant and must not weigh the evidence, which is an exclusive function of the jury. *State v. May*, 100 Wn. App. 478, 482, 997 P.2d 956 (2000).

The Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the Washington Constitution guarantee a defendant the right to trial by jury and to defend against criminal allegations. *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). "A defendant's right to an opportunity to be heard in his defense, including the rights to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence." *Jones*, 168 Wn.2d at 720.

To raise the necessity defense, a defendant must show by a preponderance of the evidence that "(1) [the defendant] reasonably believed the commission of the crime was necessary to avoid or minimize a harm, (2) the harm sought to be avoided was greater than the harm resulting from a violation of the law, (3) the threatened harm was not brought about by the defendant, and (4) no reasonable legal alternative existed." *Ward*, 8 Wn. App. 2d at 372 (citing *State v. Gallegos*, 73 Wn. App. 644, 650, 871 P.2d 621 (1994); 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.02, at 292 (4th ed. 2016) (WPIC)); *see also State v. Vander Houwen*, 163 Wn.2d 25, 31-32, 177 P.3d 93 (2008).

*State v. Spokane County Dist. Court & Reverend George Taylor*
No. 98719-0

The superior court and Division Three rested their decisions on the basis that Rev. Taylor "cannot under the circumstances of this case, [demonstrate] that he does not have a reasonable legal alternative to the charged acts as alleged by the State." CP at 232; *see also State ex rel. Haskell*, 13 Wn. App. 2d at 584 ("The parties largely focus on the fourth element, which we believe is dispositive.") In doing so, Division Three held that there "are always reasonable legal alternatives to disobeying constitutional laws" and whether they are effective in producing change is irrelevant to the necessity defense. *Id.* at 586. However, this reading of the necessity defense is untenable.

### A. Reasonable Legal Alternatives Must Be Effective

It cannot be that there "are always reasonable legal alternatives to disobeying constitutional laws." *Id*. At first blush, this broad pronouncement cannot be maintained. Imagine the hypothetical hiker who breaks into a cabin to survive a snowstorm. The trespass law they violated is constitutional. Would we deny this individual the necessity defense because he had some chance of surviving outside or could have lobbied for an exemption to the statute for snowstorms at some earlier point in time? As we have stated before, a defendant presenting a necessity defense "need not demonstrate exhaustion of every remedy, but a fact finder may take into consideration the measures provided by the [relevant laws and legislature] when determining what is 'reasonably necessary.'" *Vander Houwen*, 163 Wn.2d at 34. This

11

*State v. Spokane County Dist. Court & Reverend George Taylor*
No. 98719-0

demonstrates that while there may be alternatives in the abstract, it is ultimately a

question for the "fact finder" to take into consideration, when determining whether the

ultimate course of action was "reasonably necessary." *Id.*

Further, the plain wording of the pattern jury instructions, that "no reasonable

legal alternative exist[s]," demonstrates that an alternative must be more than simply

available. As the comments to these instructions make clear, the use of the word

"reasonable" is deliberate and constitutes a distinct requirement. 11 WPIC 18.02 cmt.

at 292. An alternative is always available in the abstract, but the inclusion of

"reasonable" means that those alternatives must be effective, otherwise they would not

be reasonable. In fact, all three divisions of the Court of Appeals have previously

interpreted "reasonable" in this manner.

In *Ward*, Division One held that the defendant had created a question of fact as

to whether there were reasonable legal alternatives by presenting his history of his

failed attempts utilizing those alternatives. 8 Wn. App. 2d at 376. Like Rev. Taylor,

Mr. Ward "offered evidence of his more than 40 years being involved in various

environmental movements . . . and how most of those efforts have failed." *Id*. at 375.

As a result, this created a "question for the jury" regarding whether these are actually

reasonable alternatives given the specific facts in that case. *Id*. at 376.

In *State v. Parker*, Division Two found that the defendant failed to prove that no

reasonable legal alternative existed because the defendant failed to show """"that he had

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefits of the alternative."'"  127 Wn. App. 352, 355, 110 P.3d 1152 (2005) (quoting *United States v. Harper*, 802 F.2d 115, 118 (5th Cir. 1986) (quoting *United States v. Gant*, 691 F.2d 1159, 1164 (5th Cir. 1982))).  There, the defendant testified he was in fear for his life after a shooting, but he never contacted the police or demonstrated that contacting the police would be futile.  *Id*. at 356.

In *State v. Jeffrey*, Division Three assessed reasonableness in determining that a "phone call to the police was, by itself, an adequate alternative" given the specific facts of the case.  77 Wn. App. 222, 227, 889 P.2d 956 (1995).  Therefore, because the defendant had in fact taken the adequate alternative and still chose to violate the law, his actions were unreasonable.

As a result, these cases demonstrate that "reasonable" means that a legal alternative must be adequate or effective.  If the legal alternative is only illusory, or unavailable at the moment it is needed, it is not a reasonable alternative.  Moreover, whether an alternative is reasonable or adequate will depend on the specific facts of the case.  In some situations, a phone call to the police could be adequate or in another situation, there could be no time.  Likewise, taking proactive measures may prevent a disaster from occurring, but in another situation those same measures could be futile in preventing the disaster.  In each scenario the facts will determine whether a legal alternative is truly reasonable, and if the legal alternative is ineffective, then it is not a

*State v. Spokane County Dist. Court & Reverend George Taylor*
No. 98719-0

reasonable alternative. If the defendant offers evidence that they have actually tried the alternative, had no time to try it, or have a history of futile attempts with the alternative, they have created a question of fact for the jury regarding whether there are reasonable legal alternatives.

### B. Rev. Taylor Has Presented a Question of Fact Whether No Reasonable Legal Alternatives Exist

The State argues that Rev. Taylor's offer of proof failed to establish that there was no reasonable legal alternative. A challenge to the sufficiency of the evidence "admits the truth thereof and all inferences that can reasonably be drawn therefrom." *State v. Cole*, 74 Wn. App. 571, 578, 874 P.2d 878 (1994). To demonstrate that there is no reasonable legal alternative but to commit the underlying crime, the defendant must show "'"that he had actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefits of the alternative."'" *Parker*, 127 Wn. App. at 355 (quoting *Harper*, 802 F.2d at 118 (quoting *Gant*, 691 F.2d at 1164)). We hold that Rev. Taylor has offered enough evidence to create a question of fact as to whether there were reasonable legal alternatives.

Rev. Taylor has dedicated much of his life calling attention to the harms of climate change through lawful methods. Over the years, Rev. Taylor has consistently voted for "green candidates" and been involved with the political process. He has sent letters to United States Senators Maria Cantwell and Patty Murray, as well as United States Representative Cathy McMorris Rodgers. He has personally visited

14

government offices, called, sent e-mails, and delivered petitions to public officials. He

has peacefully expressed his concerns through the political process and has urged the

Spokane City Council to adopt measures to minimize the spread of coal dust from coal

trains and to prevent oil spills by increasing safety measures for oil tankers. Rev.

Taylor has testified on statewide environmental railroad issues and actively worked on

the Safer Spokane Initiative that would help regulate trains.

Moreover Professor Tom Hastings, an expert on nonviolent resistance, testified

that peaceful civil disobedience is essential to combating climate change. *State ex rel.*

*Haskell*, 13 Wash. App. 2d at 594 (Fearing, J., dissenting). According to Professor

Hastings, Rev. Taylor had taken reasonable legal alternatives to civil disobedience

prior to the date of his arrest, without success. *Id*. at 595. Looking at these facts as a

whole, and in a light most favorable to the defendant, Rev. Taylor has created a

question of fact for the jury regarding whether he has tried alternatives that were

unsuccessful and had no reasonable legal alternatives. *See Ward*, 8 Wn. App. 2d at

375-76.

> C.     *In the Interest of Judicial Economy, We Hold That Rev. Taylor*
>        *Has Satisfied the Other Three Elements of the Necessity Defense*

In the interests of judicial economy, we may consider an issue that is likely to

occur following remand if the parties have briefed and argued the issue in detail.

*Phila. II v. Gregoire*, 128 Wn.2d 707, 716, 911 P.2d 389 (1996). Therefore, we will

*State v. Spokane County Dist. Court & Reverend George Taylor*
No. 98719-0

determine whether Rev. Taylor has proffered enough evidence on the remaining three elements of the necessity defense to permit the defense to be presented. These three elements are (1) Rev. Taylor reasonably believed the commission of the crime was necessary to avoid or minimize a harm, (2) the harm sought to be avoided was greater than the harm resulting from a violation of law, and (3) the threatened harm was not brought about by the defendant. *Vander Houwen*, 163 Wn.2d at 31-32; *Ward*, 8 Wn. App. 2d at 372. "A challenge to the sufficiency of evidence 'admits the truth thereof and all inferences that can reasonably be drawn therefrom.'" *Ward*, 8 Wn. App. 2d at 372 (quoting *Cole*, 74 Wn. App. at 578). "'It requires the trial and appellate courts to interpret the evidence most favorably for the defendant.'" *Id*. (quoting *Cole*, 74 Wn. App. at 578-79.

Rev. Taylor offered testimony that the commission of his crimes was necessary to avoid or minimize a harm. The harm he sought to avoid and minimize was the imminent danger to Washington State due to climate change and the serious and imminent risk of danger to the safety of Spokane citizens in the downtown area where BNSF Railway transported volatile oil. These are harms that Rev. Taylor did not create. Dr. Running likewise testified about the need for dramatic action to reverse the effects of climate change, while expert Fred Millar offered testimony that the harm from a train derailment in the Spokane area was both imminent and grave. Taken in a light most favorable to the defendant, Rev. Taylor has proffered enough evidence to

16

State v. Spokane County Dist. Court & Reverend George Taylor
No. 98719-0

reach the jury on the question of whether he believed his actions were necessary, that there were actual harms he sought to minimize or avoid, and that he did not bring about these threatened harms.

Equally, Rev. Taylor has put forth sufficient facts to support the conclusion that the harm he sought to avoid was greater than the harm resulting from a violation of the law. Importantly, Rev. Taylor need not show that the harm was actually minimized or avoided, but only that he was attempting to avoid or minimize the harm. *Id.* at 374 (citing *Gallegos*, 73 Wn. App. at 651 (describing the second prong as "the harm sought to be avoided [, not the harm actually avoided,] was greater than the harm resulting from a violation of the law")); *see also* 11 WPIC 18.02, at 292 ("harm sought to be avoided"). As the record reflects, he planned the protest when no trains were scheduled to approach, aiming to minimize any safety concerns, and he notified BNSF Railway. He made it a priority not to cause any property damage and only stopped the train yard for a period of 45 minutes. The State has offered no evidence to dispute this de minimis harm. As a result, Rev. Taylor has proffered enough evidence to reach the jury that the harm he sought to avoid, that of climate change and train derailments, is far greater than the harm that Rev. Taylor caused.

## CONCLUSION

Because RCW 7.16.040 is an extraordinary grant of jurisdiction that requires the sound discretion of the court, we hold that Rev. Taylor's notice of disqualification

17

*State v. Spokane County Dist. Court & Reverend George Taylor*
No. 98719-0

was untimely. However, on the issue of the necessity defense, Rev Taylor has made

the necessary showing to create a question of fact for the jury. Whether no reasonable

legal alternatives exist must take into account the specific facts of the case. Simply

because a law is constitutional, does not mean that there are always reasonable legal

alternatives. Ultimately, whether an alternative is reasonable depends on whether the

alternative would be effective in avoiding the purported harm. If the defendant

creates a question of fact as to whether a legal alternative would be effective, then the

reasonableness of that alternative is a question for the jury. Therefore, we reverse the

Court of Appeals on this issue.

_____
Owens, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Stephens, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Spokane County Dist. Court & George E. Taylor*, No. 98719-0

No. 98719-0

GORDON McCLOUD, J. (dissenting in part)—As the majority

acknowledges, "'[t]hose coming before the court have a fundamental right to an

impartial decision-maker.'"  Majority at 6 (alteration in original) (quoting *Godfrey*

*v. Ste. Michelle Wine Estates Ltd.*, 194 Wn.2d 957, 959, 453 P.3d 992 (2019)).

And our legislature has protected that right since 1911 by providing litigants with a

single opportunity to change the judge assigned to their case—to "affidavit" that

judge—with no questions asked.

The statute that provides this opportunity—RCW 4.12.050(1)—has always

done so in a way that allowed the litigants to really use it:  the statute and the case

law interpreting it always provided that litigants had to have notice of which judge

was assigned before they could be expected to "affidavit" that judge.

The majority, however, presumes that the legislature intended to strip

litigants of the practical ability to "affidavit" a judge at all in some situations.  It

holds for the first time that litigants lose this right completely if they fail to file

their "affidavit" at a time when it is absolutely impossible for them to file it:

before they have notice that a proceeding is occurring, that there is a judge

1

*State v. Spokane County Dist. Court & George E. Taylor*, No. 98719-0
(Gordon McCloud, J., dissenting in part)

assigned, that the judge is about to make a discretionary decision, and that their opportunity to affidavit that judge will disappear forever the moment that discretionary decision occurs.

The problem with that approach is that notice and a right to be heard are fundamental components of due process. *See State v. Storhoff*, 133 Wn.2d 523, 527, 946 P.2d 783 (1997) (citing *State v. Rogers*, 127 Wn.2d 270, 275, 898 P.2d 294 (1995)). And, as discussed below, notice of the hearing, notice of the judge assigned to the hearing, and the right to disqualify that judge before they make a discretionary decision, have always been considered components of the judge disqualification statute.

George Taylor was deprived of all those rights in this case. Taylor asserts that he had no notice that the writ proceedings were even occurring and that a discretionary judicial decision was in the offing until after that discretionary decision had been made. Neither the State nor the superior court provided *any* notice to Taylor until after the writ issued.[1] To exercise his rights, Taylor would have had to have filed his notice of disqualification before he knew of the

---

[1] The trial court's findings of fact clearly state that "[d]efense counsel was not given notice of the hearing in which the Writ was presented to the Judge, nor was defense counsel advised of which Spokane County Superior Court Judge would preside over the ex parte proceeding." Clerk's Papers at 48.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

existence of superior court proceedings, much less to which judge those proceedings had been assigned.

I therefore respectfully dissent in part. The majority's application of the judge disqualification statute cannot be what the legislature intended. A closer look at the legislative history and our prior interpretations of the statute offers a better reading—a reading consistent with core due process principles of notice and an opportunity to be heard.

## ANALYSIS

According to RCW 4.12.050(1), "[a]ny party to or any attorney appearing in any action or proceeding in a superior court may disqualify a judge from hearing the matter" subject to several limitations. One of these limitations is that "[n]otice of disqualification must be filed and called to the attention of the judge before the judge has made any discretionary ruling in the case." RCW 4.12.050(1)(a). This statute "reflects an accommodation between two important, and at times competing, interests: a party's right to one change of judge without inquiry and the orderly administration of justice." *Marine Power & Equip. Co. v. Dep't of Transp.*, 102 Wn.2d 457, 463, 687 P.2d 202 (1984).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The statute is "unqualified" and a matter of right. *State v. Lile*, 188 Wn.2d

766, 781, 398 P.3d 1052 (2017) (collecting cases that hold that disqualifying one

judge is "a matter of right").

The majority's application of this statute is certainly plausible, based solely

on statutory language read in isolation. But in my opinion, the majority opinion

produces an absurd result: it requires Taylor to have filed his notice of

disqualification *before* he knew about the superior court proceedings. I would read

the statutory language in the context of the goal that the legislature was trying to

accomplish and, consistent with our prior case law interpreting RCW 4.12.050, I

would hold that Taylor properly exercised his affidavit. I would therefore reverse

the Court of Appeals and remand to the superior court for further proceedings

before a different judge.

I.    OUR PRECEDENT ALLOWS A PARTY TO DISQUALIFY A JUDGE UNLESS THE
      JUDGE HAS ISSUED A DISCRETIONARY RULING *OF WHICH THE PARTY HAD
      NOTICE*

When analyzing a statute we have interpreted before, we often begin with

our prior interpretations. *See, e.g.*, *State v. Law*, 154 Wn.2d 85, 95, 110 P.3d 717

(2005) (turning to "well-established" case law to interpret the Sentencing Reform

Act of 1981, ch. 9.94A RCW). This court has consistently interpreted RCW

4.12.050 to allow parties to disqualify a judge years into litigation, when the party

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

is newly joined to the litigation—to make sure that the right to disqualify does not disappear before the litigant has notice of the proceeding or the judge.

In *Marine Power*, for example, we allowed a "party joined [two years into] the pretrial discovery stage of complex, multi-party litigation" to "move for and receive a change of judge," even though the judge had already made several discretionary decisions earlier in the litigation. 102 Wn.2d at 458 (citing RCW 4.12.040, .050). The critical reason for our decision was that the new party, who was "joined late in the pretrial . . . stage," lacked notice of the proceedings and of the assigned judge before those discretionary decisions were made. *Id.* We held that there had been "no contention" that the judge had "made a discretionary ruling after petitioner's joinder and *of which it had been given adequate notice*." *Id.* at 460-61 (emphasis added).

Likewise, in *Public Utilities District No. 1 of Klickitat County v. Walbrook Insurance Co.*, a newly joined party had actual notice of the proceedings and had participated as a nonparty, but nevertheless retained the right to disqualify the judge after being joined as a party, regardless of how many discretionary rulings that judge had already made. 115 Wn.2d 339, 797 P.2d 504 (1990) (*PUD No. 1*).

Just like in *Marine Power* and *PUD No. 1*, the trial court in this case did not issue any discretionary decision *after* Taylor received notice of the proceedings.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Spokane County Dist. Court & George E. Taylor*, No. 98719-0
(Gordon McCloud, J., dissenting in part)

The only discretionary decision was the actual granting of the State's petition for writ of review without notice to Taylor.[2] *See* RCW 7.16.050. So, seemingly, under our clear precedent, Taylor should not be precluded from disqualifying the superior court judge on the basis of discretionary rulings that predated his entry into the case.

The majority comes to the opposite conclusion because the legislature amended the statute since those decisions, stressing the importance of notice and a right to be heard, were issued. But as we explain below, the change of language did not undermine the logic and holdings of those decisions.

II.   THE LEGISLATURE DID NOT INTEND TO OVERTURN OUR PRECEDENT—THUS IT REMAINS GOOD LAW

The legislature first codified the right to disqualify a single judge in 1911. LAWS OF 1911, ch. 121. At that time, the "statute did not contain a timeliness requirement. In order to avoid the absurd result of parties invoking the court's discretion and then waiting to see the disposition of the judge before asserting the

---

[2] Our Court of Appeals has held that a prosecutor's pursuit of a statutory writ without notice to a criminal defendant can also violate due process protections and speedy trial rights. *City of Seattle v. Agrellas*, 80 Wn. App. 130, 136-37, 906 P.2d 995 (1995) ("Because [the] writ impacted the Appellants' right to a speedy trial, they were entitled to notice of the proceeding when it was initiated, not after the writ had issued."). But even if the notice-free writ procedure the State pursued did not violate Taylor's due process rights, he was entitled to disqualify the judge under RCW 4.12.050.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

right, this court read a timeliness requirement into the statute." *State v. Parra*, 122 Wn.2d 590, 599, 859 P.2d 1231 (1993) (citing *State ex rel. Lefebvre v. Clifford*, 65 Wash. 313, 315, 118 P. 40 (1911)). Our judicially created timeliness requirement "stated essentially that an affidavit of prejudice was timely so long as it was filed before the court made any ruling apprising the parties of the court's predisposition in the case." *Id.* at 600.

The legislature codified this judge-made rule in 1927. Laws of 1927, ch. 145, § 2. The amendments required that an affidavit of prejudice be filed

> before [the judge] shall have made any ruling whatsoever in the case, either on the motion of the party making the affidavit, or on the motion of any other party to the action, of the hearing of which the party making the affidavit *has been given notice*, and before the judge presiding has made any order or ruling involving discretion, but the arrangement of the calendar, the setting of an action, motion or proceeding down for hearing or trial, the arraignment of the accused in a criminal action or the fixing of bail, shall not be construed as a ruling or order involving discretion within the meaning of this proviso.

*Id.* (emphasis added). This language survived relatively unchanged until 2017, and this is the language that *Marine Power* and *PUD No. 1* interpreted. If we were applying the pre-2017 statute today, then even the majority would likely acknowledge that Taylor was entitled to disqualify the superior court judge in this case.

7

*State v. Spokane County Dist. Court & George E. Taylor*, No. 98719-0
(Gordon McCloud, J., dissenting in part)

In 2017, however, the legislature entirely rewrote RCW 4.12.050.  The first part of the statute now says:

> (1) Any party to or any attorney appearing in any action or proceeding in a superior court may disqualify a judge from hearing the matter, subject to these limitations:
>
> (a) Notice of disqualification must be filed and called to the attention of the judge before the judge has made any discretionary ruling in the case.
>
> (b) In counties with only one resident judge, the notice of disqualification must be filed not later than the day on which the case is called to be set for trial.
>
> (c) A judge who has been disqualified under this section may decide such issues as the parties agree in writing or on the record in open court.
>
> (d) No party or attorney is permitted to disqualify more than one judge in any matter under this section and RCW 4.12.040.

RCW 4.12.050.  Subsection (2) then provides a list of actions that, although they might be considered "discretion[ary]," still do not preclude a later notice of disqualification.

The legislature did not conceal the reasons for these changes.  Under the old statute, motions to disqualify judges were called "affidavits of prejudice," and "prejudice" was considered a term that carried unwarranted implications about the trial court's neutrality.  Former RCW 4.12.050(1) (2009).  The amendments "[c]hang[ed] the language in the law from the term 'prejudice' to 'disqualification'" because "[i]t is more accurate and some parties don't like to use

8

*State v. Spokane County Dist. Court & George E. Taylor*, No. 98719-0
(Gordon McCloud, J., dissenting in part)

the term prejudice." S.B. REP. ON SUBSTITUTE S.B. 5277, 65th Leg., Reg. Sess. (Wash. 2017). The new version also "expanded" the list of nondiscretionary rulings and reorganized that list to "make[] it easier for parties to understand what rulings are considered non-discretionary." *Id.* Critically, the intent of the bill was to have "*no effect on the rights of a party to seek a change of judge.*"[3] *Id.* (emphasis added).

Where, as here, legislative history states that it "effect[s] 'no substantive change,'" we accept that statutory amendments do not rework fundamental parts of a statute. *Associated Press v. Wash. State Legislature*, 194 Wn.2d 915, 924-25, 454 P.3d 93 (2019) (plurality opinion) (quoting H.B. REP. ON SUBSTITUTE H.B. 1133, at 2-3, 59th Leg., Reg. Sess. (Wash. 2005)). For example, in *Associated Press*, the legislature recodified an entire statutory chapter, divorced it from a previously associated definitions section, and then wrote a new, distinct definitions section for the new chapter. *Id* at 923-24. Nonetheless, we applied the definitions

---

[3] I acknowledge that the Senate bill report is not completely clear about whether this phrase—about not intending to affect the rights of a party to seek a change of judge—refers specifically to the change in terminology from "prejudice" to "disqualification" or whether it refers to the rewrite of the bill as a whole. But it is certainly clear that there was no indication in the legislative history of any intent to deprive litigants of the right to notice of the existence of a proceeding and of an assigned judge before the time to challenge that judge passed. And one would think that if such a dramatic change were intended, someone might have mentioned it.

*State v. Spokane County Dist. Court & George E. Taylor*, No. 98719-0
(Gordon McCloud, J., dissenting in part)

from the no-longer-associated chapter because neither change "broke th[e] chain" that linked the original statute to its original definition. *Id.* at 925. If the legislature had truly intended to change the statute so dramatically, we reasoned, it would have provided "more—such as notice to the electorate." *Id.*

The same can be said about the legislature's amendments in this case. Just as in *Associated Press*, the legislature has reworked the statute and changed the relevant language. But it clarified its reasons for doing so—it was seeking to provide clarity on the meaning of "discretionary" decisions and it was responding to criticisms of its previous use of the word "prejudice." It was not responding to a call for substantive changes, and it made no reference to intending any substantive changes. It certainly made no reference to overruling prior case law about the importance of notice and an opportunity to be heard in this exact context. In the absence of any "indication that the legislature intended to overrule [our prior] cases," we should "assume that the new legislation is in line with our prior decisions." *Neil F. Lampson Equip. Rental & Sales, Inc. v. W. Pasco Water Sys., Inc.*, 68 Wn.2d 172, 176, 412 P.2d 106 (1966).

Thus, I would follow *Marine Equipment* and *PUD No. 1*, which remain good law. And I would hold that under those decisions, RCW 4.12.050 entitled Taylor

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Spokane County Dist. Court & George E. Taylor*, No. 98719-0
(Gordon McCloud, J., dissenting in part)

to disqualify Judge Clarke because Taylor lacked notice of the only discretionary decision that predated his motion.

III.    THE MAJORITY'S READING COULD LEAD TO ABSURD RESULTS

One more interpretive principle compels this conclusion: "we presume the legislature does not intend absurd results." *State v. Ervin*, 169 Wn.2d 815, 823-24, 239 P.3d 354 (2010) (citing *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983)). It seems to me that it would be pretty close to absurd to require a party to move for disqualification of a judge whose identity they do not know in a proceeding they are not aware of. I don't think we should choose that interpretation of the statute, when there is another, more plausible, interpretation: the one that preserves our case law on the importance of notice and a right to be heard in this context.

CONCLUSION

As the majority holds, "'The right to peremptory removal of a judge without substantiating a claim of actual prejudice is not of constitutional dimension.'" Majority at 8-9 (quoting *State v. Gentry*, 183 Wn.2d 749, 760, 356 P.3d 714 (2015)). Thus, the legislature is not *required* to codify such a right at all. But the majority reads a routine update to antiquated statutory language as a fundamental

11

*State v. Spokane County Dist. Court & George E. Taylor*, No. 98719-0
(Gordon McCloud, J., dissenting in part)


procedural change, stripping away a right that Washington litigants have enjoyed

for over 100 years.  I respectfully disagree.[4]


_____
Gordon McCloud, J.

_____
Whitener, J.

---

[4] Because I would reverse the denial of Taylor's disqualification motion, I would remand to the superior court for the case to be assigned to a different superior court judge.  Thus, I would not reach the necessity defense question.